UNITED STATES of America,
Plaintiff–Appellee,

v.

Richard L. CLARK,
Defendant–Appellant.

No. 89–30276.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 7, 1990.

Decided Aug. 28, 1990.

Nancy Shaw, Assistant Federal Public Defender, Anchorage, Alaska, for the defendant-appellant.

M. Alice Thurston, Dept. of Justice, Land and Natural Resources Div., Washington, D.C., for plaintiff-appellee.

Donald Craig Mitchell, Anchorage, Alaska, for amicus curiae.

Before RONEY,[*] FARRIS, and FERNANDEZ, Circuit Judges.

FARRIS, Circuit Judge:

This case challenges the constitutionality of a section of the Marine Mammal Protection Act (16 U.S.C. § 1361, *et seq.*) as applied to defendant-appellant Clark. The challenge is one of vagueness: it is made against a section prohibiting the "wasteful" taking of marine mammals under a moratorium exemption allowed to Alaskan natives, 16 U.S.C. § 1371(b).

The district court had jurisdiction under 18 U.S.C. § 371 and 16 U.S.C. § 1371. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and Fed.R.App.P. 4(b). Whether a statute or regulation is unconstitutionally vague is a question of law and the standard of review is *de novo*. *United States v. Hutson*, 843 F.2d 1232, 1234 (9th Cir.1988).

## BACKGROUND

On the morning of July 27, 1988, Richard Clark and three family members, all Alaskan natives, and one non-native, shot nine walrus. From all nine carcasses, the Clarks removed the head (ivory tusks and whiskers), the oosik (the penis bone), and the flippers. They were able to "completely butcher" one carcass and take its meat and useful organs. On the morning of July 28, 1990, the Clarks left the beach, with the completely butchered walrus and six carcasses under tow; they left two carcasses on the beach. The Clarks claimed that the imminent arrival of low tide created a dangerous situation requiring them to leave before butchering the remaining carcasses. The six carcasses under tow were all lost at sea. Clark was then prosecuted for violating 16 U.S.C. § 1371.

16 U.S.C. § 1371 establishes a moratorium on the taking or importation of marine mammals and marine mammal products. There is an exemption provided to Alaskan natives:

[T]he provisions of this chapter shall not apply with respect to the taking of any marine mammal by any Indian, Aleut, or Eskimo who resides in Alaska and who dwells on the coast of the North Pacific Ocean or the Arctic Ocean if such taking—

(1) is for subsistence purposes; or

(2) is done for purposes of creating and selling authentic native articles of handicrafts and clothing: *Provided,* That only authentic native articles of handicrafts and clothing may be sold in interstate commerce: *And provided further,* That any edible portion of marine mammals may be sold in native villages and towns in Alaska or for native consumption. For purposes of this subsection, the term "authentic native articles of handicrafts and clothing" means items composed wholly or in some significant respect of natural materials, and which are produced, decorated, or fashioned in the exercise of traditional native handicrafts without the use of pantographs, multiple carvers, or other mass copying devices. Traditional native handicrafts include, but are not limited to weaving, carv-

---

[*] Honorable Paul H. Roney, Senior Circuit Judge, for the Eleventh Circuit, sitting by designation.

ing, stitching, sewing, lacing, beading, drawing, and painting; and

(3) in each case, is not accomplished in a wasteful manner.

16 U.S.C. § 1371(b). The Secretary maintains the power to regulate even native takings when he determines that any species or stock is depleted. *Id.*

The Department of the Interior, United States Fish and Wildlife Service, further defines "wasteful manner" as a process "which results in the waste of a substantial portion of the marine mammal...." 50 C.F.R. § 18.3 (1989). Clark argues that this definition conflicts with congressional intent, and that if it does reflect congressional intent, it is unconstitutionally vague.

## I. Congressional Intent

■ The statutory exemption for Alaskan natives under section 1371(b)(2) requires (1) that the marine mammal products be used in authentic native crafts and (2) that "any edible portion of marine mammals may be sold in native villages and towns in Alaska or for native consumption." Clark offers a novel interpretation of the second requirement of this subsistence exemption. He claims that because the language of that clause is permissive, food need not be sold and may be left behind. A close examination of the genesis of the bill demonstrates that the subsistence exemption is intended to clarify that the meat, blubber, and organs need not be used for subsistence, but may also be used as the basis of a cash economy.

The statute started in the House of Representatives as a moratorium with an exemption for subsistence purposes only.[1] Alaskan Senator Stevens worked an amendment into the Senate version to provide an exemption for taking marine mammals for "purposes of creating and selling authentic native articles of handicrafts and clothing." 16 U.S.C. § 1371(b)(2). Stevens argued that such handicrafts formed an important basis for a small cash economy for the natives. Stevens was also concerned about the food use of the marine mammals as part of the cash economy:

> For many of the Alaskan Natives, the selling of their handicrafts, fashioned painstakingly and with great skill from ocean mammals is the sole basis of their cash economy. These include the carving of ivory, the sewing of fur parkas and mukluks, and the sale of mammal food to other Natives.

118 Cong.Rec. 25,259 (1972) (statement of Sen. Stevens). Stevens noted elsewhere that "Extensive coastal bartering and sale of mammal food takes place"; "A small but vital marine food industry has been created in the Native community. Section 101(b) will also protect this"; "Mr. President, if the Native people of my State are denied the right to carve, sew, and utilize fully the entire animal carcass, the result will be truly disastrous." *Id.* at 25,259–60. It is incongruous to find Stevens asking that the native Alaskans be free to use *all the carcass*, not just part of it, while Clark and amicus argue that Stevens' position supports Clark's claim that he did not engage in wasteful taking. Given the legislative history and the statutory text, we hold that the exemption is properly viewed as protecting subsistence hunting and use of mammal parts for a limited cash economy, so long as neither use is wasteful.

Clark suggests that custom has now changed to the point that taking walrus for a few parts alone (head, oosik and flippers) should be considered non-wasteful, even if the remainder of the animal is left behind and even if much greater use of the animal was made in the past. If so, the careful husbanding of resources which Congress envisioned may also be a thing of the past, but that does not mean that the new custom, if it be such, is not wasteful. It only means that Congress may have to revisit this area of the law if it now wishes to allow native Alaskans to take animals under the changed conditions (if in fact they

---

1. "'Subsistence' means the use by Alaskan Natives of marine mammals taken by Alaskan Natives for food, clothing, shelter, heating, transportation, and other uses necessary to maintain the life of the taker or for those who depend upon the taker to provide them with such subsistence." 50 C.F.R. § 18.3.

are changed). In the meantime, the courts must enforce the law as written.

## II. The Regulation Definition is within the Scope of Authority

■ In light of the legislative history, the regulation does not exceed the statutory authority. 16 U.S.C. § 1382(a) provides the Secretary authority to "prescribe such regulations as are necessary and appropriate to carry out the purposes of this subchapter." Under the Administrative Procedure Act, we must show deference to the interpretation by the agency charged with a statute's interpretation. We must "reject administrative constructions of a statute that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement." *United States v. Louisiana–Pacific Corp.*, 754 F.2d 1445, 1447 (9th Cir.1985). "The regulation is proper so long as it conforms to the fundamental objective of the Act, rationally complements its remedial scheme and 'the policy [thereby] announced ... is "sufficiently substantial and consistent" to compel the conclusion that Congress approved it.'" *Balelo v. Baldrige*, 724 F.2d 753, 760 (9th Cir.) (en banc), *cert. denied*, 467 U.S. 1252, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984). To prohibit taking of walrus where a "substantial portion" is wasted is consistent with Congressional intent.

## III. The Regulation is not Vague

■ Clark also claims that the regulation is unconstitutionally vague in its prohibition of wasting a "substantial portion" of walrus carcass. The void-for-vagueness doctrine is

> an aspect of due process and requires that the meaning of a penal statute be determinable. A statute is void for vagueness if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes, or if it invites arbitrary and discriminatory enforcement.

*Schwartzmiller v. Gardner*, 752 F.2d 1341, 1345 (9th Cir.1984) (citations omitted). Clark challenges the regulation "as applied" and not on its face. Clark implicitly agrees that failure to take even what he took (head, oosik, and flippers) or engaging in pelagic killing would be taking in a "wasteful manner."

We hold that the regulation provides sufficient notice to Clark so that he may be held criminally responsible. "Substantial portion" is the pertinent language. These words are of sufficient clarity and common usage to apply to Clark: he took only a small portion of the walrus carcasses and left the majority to rot. There was clearly some value to taking more than just the head, oosik, and flippers. Clark himself recognized that "[t]raditional usage ... favors harvesting the ivory, blubber, skin and internal organs, the meat being less palatable." With the exception of one walrus, Clark took neither the blubber, skin or internal organs, or the meat. Clark's actions allow a jury to properly determine whether his actions were "wasteful."

AFFIRMED.