28 F.3d 110
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Patrick OMIAK, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dennis SOOLOOK, Defendant-Appellant.
 Nos. 93-30337, 93-30339.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 3, 1994.
Decided June 24, 1994.
 
 Before: GOODWIN, SCHROEDER, and NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Patrick Omiak and Dennis Soolook were tried before Magistrate Branson and found guilty of various acts of wasting walrus in violation of the Marine Mammal Protection Act, 16 U.S.C. Sec. 1372(a) and 18 U.S.C. Sec. 371. They appealed their convictions to the district court. The government cross-appealed Soolook's sentence. The district court affirmed both convictions and Omiak's sentence, but remanded Soolook's case for resentencing.
 
 
 3
 Omiak and Soolook now appeal the district court's judgment. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm the judgment of the district court in part except that we vacate Omiak's sentence and remand his case for resentencing.
 
 
 4
 Parts I and II address claims of error raised by both Omiak and Soolook. Parts III through VIII address issues raised on appeal by Omiak only. Part IX pertains only to Soolook's appeal.
 
 
 5
 * The Act establishes a moratorium on the taking or importation of marine mammals and marine mammal products. See 16 U.S.C. Sec. 1371. The Act exempts from its general prohibition the taking of any marine mammal by native Alaskans for "subsistence hunting and use of mammal parts for a limited cash economy, so long as neither use is wasteful." United States v. Clark, 912 F.2d 1087, 1089 (9th Cir.1990); 16 U.S.C. Sec. 1371(b).[1] It is basically undisputed that the defendants (1) went hunting and killed walrus without harvesting some of the walrus meat or (2) shot a number of walrus in the water without attempting to retrieve them.
 
 
 6
 At trial, defendants argued that their actions did not constitute wasteful takings under the Act because the portions of walrus meat which they did not harvest were contaminated and thus inedible.[2] Defendants argue that Jury Instruction 25 unconstitutionally placed the burden on them to prove that the meat was contaminated. Jury Instruction 25 stated:
 
 
 7
 Evidence has been introduced that Defendants had a belief that the walrus meat they are alleged to have wasted was contaminated and unsafe to eat.
 
 
 8
 If you find that the meat was contaminated and unsafe to eat, or that defendants had a reasonable belief that the walrus were contaminated an unsafe to eat, whether or not that belief was mistaken, then you must find the defendants not guilty of the charges against them.
 
 
 9
 Soolook ER 36. The government responds that Jury Instruction 25 did not shift the burden to the defendants and that it was clear from all the instructions taken in context that the burden of proof was always on the government. We agree.[3]
 
 
 10
 Although Jury Instruction 25 is ambiguous as to the party that must carry the burden of proof, a number of other general instructions clearly informed the jury that the burden of proof always remained with the government. See, e.g., Soolook ER 31-32. In Jury Instruction 30 the court defined the terms "wasteful manner," instructing the jury that "[d]iscard of the unusable portion of a marine mammal is not wasteful." Soolook ER 38. The court's definition of "wasteful manner" defined what the government had to show to prove its case. We can only read Jury Instruction 30 to state that the government could not carry its burden without showing that the meat was usable. When Jury Instruction 25 is considered in the context of the instructions as a whole, see Estelle v. McGuire, 112 S.Ct. 475, 482 (1991), there is no reversible error.
 
 II
 
 11
 Counts Three and Five of the Indictment were based on two theories of waste: (1) leaving edible portions of the walrus meat and (2) firing on walrus in the water without retrieving them. The trial court gave a general unanimity instruction without specifying that the jurors must be unanimous with respect to at least one of the theories of waste. Appellants argue that failure to give a specific unanimity instruction in this case constitutes reversible error. Because they did not object to the unanimity instruction at trial, our review is for plain error. United States v. Kessi, 868 F.2d 1097, 1102 (9th Cir.1989). A general unanimity instruction is deemed sufficient unless different jurors may have convicted a defendant based upon the existence of different facts due to the complexity of the evidence, a discrepancy between the evidence and the indictment, or some other real possibility of creating juror confusion. United States v. Feldman, 853 F.2d 648, 653 (9th Cir.1988). We find no plain error.
 
 
 12
 The court gave two unanimity instructions. The unanimity instruction as to Count One was specific, stating that in order to convict on the conspiracy count the jury would have to agree to which one of the acts of wasting was committed. The unanimity instruction that covered Counts Three, Four, and Five were general, providing simply that the verdict must be unanimous. Once the specific unanimity instruction was given for Count One, it was unnecessary to repeat it for each of the charged counts. Moreover, there was only one theory of wasting relied upon by the government in Count Four--leaving edible portions of walrus after retrieving handicraft materials. In order to have convicted appellants on Count Four, the jury must have rejected their contamination defense. This rejection was a basis for unanimously convicting appellants on Counts Three and Five as well. Thus, we hold that the failure to give a specific unanimity instruction was not plain error. See United States v. Smith, 891 F.2d 703, 709 (9th Cir.1989) (explaining that "the error is harmless if no rational juror could have found the defendants guilty under the erroneous instruction and not also found them guilty under the correct instruction"), amended, 906 F.2d 385 (9th Cir.1990); United States v. Barany, 884 F.2d 1255, 1258 (9th Cir.1989) (explaining that acquittal on one count was evidence of no jury confusion).
 
 III
 
 13
 Omiak argues that in this context the Act and the regulation defining "wasteful manner" are unconstitutionally vague. In Clark, we held that the regulation's definition of "wasteful manner," which focused on whether hunters wasted a "substantial portion" of the marine animal, see 50 C.F.R. Sec. 18.3, was not unconstitutionally vague. 912 F.2d at 1090. Omiak argues that the statute is unconstitutionally vague as applied to him because he "was told by the research division of USFWS that it was unsafe to eat walrus meat at the same time he was told by enforcement division of that same agency that it was 'waste' to not eat that meat." Blue Brief at 10. Omiak's void for vagueness argument is really a fact issue for the jury. Omiak was not prosecuted for wasting inedible or contaminated meat. By convicting Omiak, the jury expressed its rejection of Omiak's defense that the walrus meat was contaminated. Omiak's vagueness challenge is without merit.
 
 IV
 
 14
 Omiak challenges the definition of "waste" in Jury Instructions 25, 29, and 30. Because he failed to object at trial, our review is for plain error. Kessi, 868 F.2d at 1102. We find none.
 
 Jury Instruction 25 provided:
 
 15
 Evidence has been introduced that Defendants had a belief that the walrus meat they are alleged to have wasted was contaminated and unsafe to eat.
 
 
 16
 If you find that the meat was contaminated and unsafe to eat, or that defendants had a reasonable belief that the walrus were contaminated and unsafe to eat, whether or not that belief was mistaken, then you must find the defendants not guilty of the charges against them.
 
 
 17
 ER 36. Omiak argues that the jury should have been instructed that it was not waste "to discard meat intended for a Native market if it bears or contains any poisonous or deleterious substance which may render it injurious to health." Blue Brief at 13. Omiak's proposed amendment adds nothing to the instruction and we hold that it was not plain error not to include it.
 
 Jury Instruction 29 provided:
 
 18
 Any Indian, Aleut or Eskimo who resides in Alaska and who dwells on the coast of the North Pacific Ocean or the Arctic Ocean may take marine mammals without a permit, subject to the restrictions contained in this section, if such taking is:
 
 
 19
 (1) For subsistence purposes, or
 
 
 20
 (2) For purposes of creating and selling authentic native articles of handicraft and clothing, and
 
 
 21
 (3) In each case, not accomplished in a wasteful manner.
 
 
 22
 ER 37. Instruction 29 tracks the language of the Act. See 16 U.S.C. Sec. 1372(a). Omiak argues that this instruction should have also stated that he had the right to harvest meat for sale in Native markets and the duty to discard meat containing any poisonous or deleterious substance. Jury Instruction 25 makes this point and it was not plain error not to repeat the point in Jury Instruction 29.
 
 Jury Instruction 30 provided:
 
 23
 "Wasteful manner" means any taking or method of taking which is likely to result in the killing or injuring of marine mammals beyond those needed for subsistence purposes or for making of authentic native articles of handicrafts and clothing, or which results in the waste of substantial portion or the marine mammal and includes without limitation the employment of a method of taking which is not likely to assure the capture or killing of the marine mammal, or which is not immediately followed by a reasonable effort to retrieve the marine mammal. Discard of the unusable portion of a marine mammal is not wasteful.
 
 
 24
 ER 38. Omiak raises the same challenge to this instruction. For the same reason we reject his challenge to Jury Instructions 25 and 29, we reject this challenge as well.
 
 V
 
 25
 Omiak is an Inupiaq. Omiak argues that the trial court abused its discretion by denying his request to be tried in Nome where there are more Inupiaqs rather than in Anchorage and that his constitutional rights were violated by denying him a fair and impartial jury which reflected a fair cross section of the community. For his constitutional challenge, Omiak would have us take judicial notice of certain documents to support his contention that Inupiaq is a distinctive group in the community. We review the trial court's venue decision for abuse of discretion. United States v. Meyers, 847 F.2d 1408, 1411 (9th Cir.1988). We review de novo a challenge to the composition of grand and petit juries to determine if a prima facie violation of the fair cross-section requirement of the Sixth Amendment and the Jury Selection Act has occurred. United States v. Sanchez-Lopez, 879 F.2d 541, 546 (9th Cir.1989). We address the constitutional challenge first.
 
 
 26
 * " 'The test for a constitutionally selected jury is the same whether challenged under the Sixth Amendment of the Constitution or under the Jury Selection and Service Act.' " Id. The Supreme Court explained in Duren v. Missouri that a prima facie violation of the fair cross-section requirement is established upon showing:
 
 
 27
 (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.
 
 
 28
 439 U.S. 357, 364 (1979). The record before us provides no basis for determining whether Inupiaqs are a "distinctive" group as required by Duren.
 
 
 29
 Omiak relies on Exhibits "B" through "H" to support his argument that Inupiaqs are part of a distinctive group. None of these exhibits were presented to the trial court. Exhibits "B" through "F" were provided to the district court, but it is unclear whether the district court took judicial notice of all of them. Omiak offers Exhibits "G" and "H" for the first time on appeal to this court. "The appealing litigant must ensure that sufficient facts are developed at trial to support a challenge on appeal." Andersen v. Cumming, 827 F.2d 1303, 1305 (9th Cir.1987). Because Omiak did not present these exhibits at trial, we will not consider them here. See Id.; see also Kirshner v. Uniden Corp. of America, 842 F.2d 1074, 1077-78 (9th Cir.1988). Based on the record on appeal, Omiak fails to show that Inupiaqs meet Duren 's first requirement.
 
 B
 
 30
 We also reject Omiak's argument that the trial court abused its discretion. Omiak fails to explain how his defense was prejudiced by the court's denial of his motion to change venue. Cf. United States v. Rewald, 889 F.2d 836, 863 (9th Cir.1989), amended 902 F.2d 18 (9th Cir.1990) ("A defendant must establish either presumed prejudice or actual prejudice to warrant a change in venue").
 
 VI
 
 31
 The defense moved to qualify Mr. Cuccarese, the director of the Arctic Environmental Information & Data Center of the University of Alaska, as an expert on Arctic pollution and its impact on marine mammals and on mercury levels in walrus that inhabit the Arctic. The trial court ruled that he was not qualified to testify as an expert on these topics. We review the court's exclusion of expert testimony for abuse of discretion. United States v. Rahm, 993 F.2d 1405, 1409-10 (9th Cir.1993).
 
 
 32
 During voir dire, Mr. Cuccarese testified that he had no medical or public health training, no degrees, research or publications in the areas of toxicology, and currently held an administrative role coordinating other scientists' research. Defendant's counsel admitted that Mr. Cuccarese would be better qualified to testify as an oceanographer. We conclude that the trial court did not abuse its discretion by refusing to qualify Mr. Cuccarese as an expert for the purpose of testifying to the likely contamination of walrus meat.[4]
 
 VII
 
 33
 Omiak intended to use the expert testimony of Dr. Ellanna to show that shooting walrus in the water during hunts was necessary for safety, that Inupiaq Eskimos generally do not eat bull walrus meat, and that the Eskimos of Little Diomede were aware of and concerned about contamination of walrus meat. The trial court ruled that it would not allow her to testify to the mental state, motivation, or reasonable belief, traditional or customary Native Alaskan hunting methods, or corroborate specific testimony of the defendants. The trial court's ruling is in accord with this circuit's caselaw and was not an abuse of discretion.
 
 
 34
 In United States v. Chen, we affirmed the district court's refusal "to receive testimony of an expert on Taiwanese customs, who would have testified that persons of Asian extraction are more susceptible to inducement by government officials." 754 F.2d 817, 823 (9th Cir.1985). We explained that "[i]f the testimony of the expert had been based on a personal examination of the Chens, we would give the matter more serious consideration." Id. We concluded that "[b]ecause the Chens failed to show any personal application of the expert's testimony, however, the district court did not abuse its discretion by excluding the testimony." Id. As in Chen, Dr. Ellanna had no personal knowledge of the defendants to support her conclusions.
 
 
 35
 Moreover, in Clark we rejected "custom" as a defense to wasting walrus under the Act. 912 F.2d at 1089. We explained in Clark that the focus of the inquiry was whether the hunters wasted a substantial portion of the animal. Id. 1090. The testimony the court excluded was irrelevant to the "substantial portion" test and would have introduced evidence that should not have been considered when determining whether Omiak violated the Act. The court did not abuse its discretion.
 
 VIII
 
 36
 Omiak's offense level was increased three levels for his role in the offense as manager or supervisor. See U.S.S.G. Sec. 3B1.1(b). We review the trial court's factual findings in the sentencing phase for clear error. United States v. Burns, 894 F.2d 334, 336 (9th Cir.1990). Focusing on the second half of the Commentary to Sec. 3B1.1(b), Omiak argues that the offense level increase was improper because he was no more likely than the other hunters to recidivate, he did not profit more from the hunt, and he presents the same danger to the public as the other hunters. The first half of the commentary states: "This adjustment is included primarily because of concerns about relative responsibility." U.S.S.G. Sec. 3B1.1(b), commentary. Since the court could have properly adjusted his sentence based on his relative responsibility in the crime, on this record the court's adjustment was not clearly erroneous.[5]
 
 
 37
 Omiak also argues that the court failed to consider factors which warranted mitigation of his sentence and departure from the guidelines. The sentencing court's discretionary decision not to depart from the guideline range is not subject to review on appeal. United States v. Morales, 972 F.2d 1007, 1011 (9th Cir.1992). Omiak also argues that the court failed to exercise its discretion not to depart, believing that it had none. For the sole reason that the court's statements can be read to mean that it was powerless to depart from the applicable guidelines range, we vacate Omiak's sentence and remand to the trial court for resentencing. We express no opinion on the merits of the particular ground asserted by Omiak in his request for downward departure.
 
 IX
 
 38
 Soolook argues that the government's filing of the cross-appeal to the district court challenging Soolook's sentence was vindictive. In support of this argument, Soolook points to a discussion between the government and his defense counsel about Soolook dropping the appeal of his conviction in return for the government dropping the sentencing cross-appeal. The government argued at sentencing before the magistrate that his sentencing calculation was in error. The government appealed Soolook's sentence to the district court. Before the district court ruled on the government's appeal, it sentenced a defendant in an unrelated case using a sentencing calculus that the government was arguing in Soolook's case was proper. The government then contacted Soolook and offered to drop the cross-appeal if he dropped the appeal of his conviction. We see no appearance of prosecutorial vindictiveness based on these facts. United States v. Sinigaglio, 942 F.2d 581, 584 (9th Cir.1991) ("To establish a prima facie case of prosecutorial vindictiveness, a defendant must show either direct evidence of actual vindictiveness or facts that warrant an appearance of such").
 
 
 39
 In addition, the government's decision not to appeal the sentence of the defendant Iyapana who did not appeal his conviction, does not make out a prima facie case of prosecutorial vindictiveness. The government argues that it may treat defendants whose situations are distinguishable differently. See United States v. Alvarado-Arriola, 742 F.2d 1143, 1145 (9th Cir.1984). The government points out that the defendant who did not appeal is deaf and required the services of a real-time transcriber to follow the court proceedings, and suffered from other serious medical problems. The government recommended at the defendant's sentencing that he be allowed to serve his two-month sentence in a halfway house which would allow him to receive medical treatment. We find no appearance of impropriety in the government's decision to appeal Soolook's sentence but not Iyapana's.
 
 
 40
 The judgment of the district court is AFFIRMED in part and REVERSED in part. Omiak's sentence is VACATED and his case is REMANDED for resentencing.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Section 1371(b) provides in relevant part:
 [T]his chapter shall not apply with respect to the taking of any marine mammal by any Indian, Aleut, or Eskimo who resides in Alaska ... if such taking--
 (1) is for subsistence purposes; or
 (2) is done for purposes of creating and selling authentic native articles of handicrafts and clothing: Provided, That only authentic native articles of handicrafts and clothing may be sold in interstate commerce; And provided further, That any edible portion of marine mammals may be sold in native villages and towns in Alaska or for native consumption ... and
 (3) in each case, is not accomplished in a wasteful manner.
 16 U.S.C. Sec. 1371(b).
 
 
 [2]
 The Act defines "take" as "to harass, hunt, capture, or kill or attempt to harass, hunt, capture, or kill any marine mammal." 16 U.S.C. Sec. 1362(12)
 
 
 [3]
 The trial court's apportionment of the burden of proof is a question of law we review de novo. United States v. Dominguez-Mestas, 929 F.2d 1379, 1381 (9th Cir.1991). The government contends that because defendants failed to object to the instruction when given, we should review their challenge on appeal for plain error. The record shows that there has been no waiver. The parties and the court discussed at length whether the government should carry the burden of proving or disproving the edibility of the walrus meat. Moreover, the defendants' counsel submitted a proposed jury instruction that stated that the burden was on the government to prove the meat was not contaminated. The trial court's formulation of Jury Instruction 25 reflects its rejection of defendants' instruction. Since a formal objection at the time the jury instruction was given would have been a pointless formality, the objection has been preserved for appeal. See Brown v. Avemco Inv. Corp., 603 F.2d 1367, 1370-71 (9th Cir.1979)
 
 
 [4]
 We also do not think the trial court abused its discretion by refusing to allow Mr. Cuccarese testify about the transmission of toxins from the water to marine mammals since defendants were unable through his testimony to draw a link between transmission of toxins to marine mammals and whether the mammal meat would be unsafe to eat
 
 
 [5]
 The record also does not support Omiak's contention that the court considered his role in the community when it adjusted his sentence