STATE OF HAWAI`I, Plaintiff-Appellee,
v.
PATRICK T. MASAOKA, Defendant-Appellant and RANDY AH NEE, Defendant.
No. 28656
Intermediate Court of Appeals of Hawaii
November 28, 2008.
On the briefs: Dean K. Young (Walters & Young LLLC) for Defendant-Appellant.
Stephen K. Tsushima, Deputy Prosecuting Attorney, City & County of Honolulu, for Plaintiff-Appellee.

NOT FOR PUBLICATION

SUMMARY DISPOSITION ORDER
RECKTENWALD, C.J., FUJISE and LEONARD, JJ.
Defendant-Appellant Patrick T. Masaoka appeals from the May 21, 2007 Judgment of Conviction and Sentence entered in the Circuit Court of the First Circuit (circuit court).[1]
On December 28, 2005, the State of Hawai`i charged Masaoka in a complaint with the Attempted Murder in the First Degree of Honolulu police sergeant Patrice Gionson, in violation of HRS §§ 705-500 (1993), 707-701(1)(b) (1993 & Supp. 2005), and 706-656 (1993 & Supp. 2005); one count of Unauthorized Control of Propelled Vehicle, in violation of HRS § 708-836 (Supp. 2005); thirteen counts of Criminal Property Damage in the First Degree, in violation of HRS § 708-820(1)(a) (Supp. 2005); one count of Promoting a Dangerous Drug in the Third Degree, in violation of HRS § 712-1243 (Supp. 2003); one count of Unlawful Use of Drug Paraphernalia, in violation of HRS § 329-43.5(a) (1993); and one count of Reckless Endangering in the Second Degree, relating to Gregory Quilit, in violation of HRS § 707-714 (1993).
The charges stemmed from a December 14, 2005 incident during which a van which had been reported stolen was observed driving erratically westbound on Kalanianaole Highway in Honolulu. Sergeant Gionson and Officer Alex Duyag stopped westbound traffic at the intersection of Kalanianaole Highway and inakoa Avenue and approached the van with their weapons drawn. Although they commanded the driver, later identified as Masaoka, to put his hands up, Masaoka did not comply. Instead, he attempted to flee by driving the van westbound in between cars that were stopped in the left and middle lanes of the highway.
Masaoka did not testify at trial, but a recording of a statement that he gave to police was introduced into evidence. The jury acquitted Masaoka of the first degree attempted murder charge, and convicted him of all the other charges.
Masaoka raises the following points of error on appeal:
(1) The circuit court "erred in failing to instruct the jury on Mr. Masaoka's choice-of-evils defense[.]"
(2) "Defense counsel's failure to submit or request a choice-of-evils instruction constituted ineffective assistance of counsel[.]"
(3) "Mr. Masaoka's convictions for criminal property damage must be reversed where there was no substantial evidence that he possessed the requisite state of mind[.]"
(4) "There was no substantial evidence to support Mr. Masaoka's conviction for Reckless Endangering in the Second Degree where he did not recklessly place Quilit in danger of death or serious bodily injury[.]"
Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised, we resolve Masaoka's points of error as follows:
(1) The circuit court did not err by not instructing the jury with regard to the choice-of-evils defense. While a jury should be instructed on every defense or theory of defense having any support in the evidence, State v. Sawyer, 88 Hawai`i 325, 333, 966 P.2d 637, 645 (1998), there was no evidentiary basis in the record for giving a choice-of-evils instruction here.
HRS § 703-302 (1993) states in relevant part:
Choice of evils. (1) Conduct which the actor believes[2] (2) to be necessary to avoid an imminent harm or evil to the actor or to another is justifiable provided that
(a) The harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged; and
(b) Neither the [Hawaii Penal] Code nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and
(c) A legislative purpose to exclude the justification claimed does not otherwise plainly appear.
(Footnote added.)
Masaoka was stopped in traffic when uniformed police approached him and told him to put his hands up. Masaoka acknowledged in his statement that he knew they were police officers and that he heard the command to put his hands up. Although Masaoka stated that he was "scared" because the police had their weapons drawn,[3] his fear did not provide a basis for ignoring the officers' commands and attempting to drive away.
Thus, there was no evidence in the record that Masaoka reasonably believed that he was avoiding a greater "imminent harm or evil" by fleeing from the police, HRS §§ 703-302(1)(a) and -300, and an instruction on the justification defense was not warranted, State v. Ortiz, 93 Hawai`i 399, 408, 4 P.3d 533, 542 (App. 2000) (finding the circuit court did not err in denying defendant's instruction on the defense of duress because "no evidence was produced that [the defendant] was coerced").
This analysis is not altered by the fact that Sergeant Gionson fired a shot at Masaoka after Masaoka ignored her commands and drove forward. Masaoka suggests that there was conflicting evidence in the record about the sequence of events and circumstances surrounding the firing of that shot. However, even by Masaoka's own account, it appears that Masaoka had moved the van forward from the center lane toward the left lane before Sergeant Gionson fired the shot. In his statement, Masaoka said that he "veered to the left," but stopped when he saw a female officer approaching him from that side. He then "stopped and veered back to the right to go, and . . . that's when [he] went to the cars." Masaoka stated that he was "already past [the officers]" when he heard the gunshot.
In short, the gunshot did not cause Masaoka to flee, since by his own account he had already begun to drive forward to escape when the shot was fired. Accordingly, the evidence did not support instructing the jury on the choice-of-evils defense.
(2) Masaoka has failed to establish that his counsel was ineffective for not submitting or requesting a choice-of-evils instruction. "The burden of establishing ineffective assistance of counsel rests upon the appellant." State v. Antone, 62 Haw. 346, 348, 615 P.2d 101, 104 (1980). To meet this burden, an appellant must establish (a) "specific errors or omissions of defense counsel reflecting counsel's lack of skill, judgment or diligence[,]" and (b) "that these errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." Id. at 348-349, 615 P.2d at 104. In this case, defense counsel's failure to request a choice-of-evils instruction was clearly not a specific error or omission reflecting defense counsel's lack of skill, judgment, or diligence because as discussed supra, the evidence did not support giving such an instruction.
Even if we assumed arguendo that there was a basis for requesting such an instruction, it is clear from the record that the decision not to request it was a tactical judgment by counsel which we will not disturb on appeal. Id. at 352, 615 P.2d at 106 ("Defense counsel's tactical decisions at trial generally will not be questioned by a reviewing court."). Defense counsel focused his entire closing argument on the attempted murder in the first degree charge, which carried a sentence of life imprisonment without the possibility of parole. HRS § 706-656. As part of that argument, defense counsel contended that Masaoka had no intention of killing Sergeant Gionson and simply was trying to flee the scene to avoid being arrested on a no-bail warrant. Indeed, defense counsel conceded, "I'm not saying what [Masaoka] did [was] right. That was wrong for him to drive off like that." Defense counsel's closing argument was apparently persuasive, since the jury acquitted Masaoka of the attempted murder charge. Having obtained the benefit of his counsel's tactical decision to focus on the far more serious charge and to acknowledge some culpability for trying to flee the scene, Masaoka cannot now complain that his counsel was ineffective for making that decision.
(3) Considering the evidence in the light most favorable to the State, State v. Richie, 88 Hawai`i 19, 33, 960 P.2d 1227, 1241 (1998), there was substantial evidence that Masaoka knowingly caused the property damage and that he recklessly placed the other drivers in danger of death or bodily injury, HRS § 708-820(1)(a).
Officer Duyag observed Masaoka's van "side swiping cars on the left and on the right and just pushing its way through." Sergeant Gionson saw the van "bulldozing away" between lanes, and heard "metal crunching and just smashing and glass cracking and just everything crunching up." She observed that the van stopped only when "the right front accel [sic] of the wheel broke off, so they weren't able to go any further." In his statement to Detective Theodore Coons, Masaoka described the path he took first toward Sergeant Gionson, and then through the vehicles in the middle and the fast lanes. Masaoka further stated that he knew the path he was taking was not a "regular lane of traffic," that he was banging cars, that he knew he "hit `em," and that his conduct was not safe.
Additionally, Brooke Wong testified that she saw the van "barreling through" the lanes of traffic. Mark Amundson testified that he saw the van "coming pretty fast in between the cars[,]" and testified that his passenger door was torn off. Several of the thirteen vehicles that were hit by the van sustained significant damage, while the remaining vehicles suffered some damage.
Given this evidence, the jury could reasonably infer that Masaoka knowingly damaged the vehicles, see State v. Pinero, 70 Haw. 509, 522 n.7, 778 P.2d 704, 713 n.7 (1989) (one acts "'knowingly'" when he or she "is aware that it is practically certain that his [or her] conduct will cause a prohibited harmful result") (citation and emphasis omitted); Territory v. Wright, 16 Haw. 123, 137 (1904) (stating that a defendant "intends the natural and plainly probable consequences" of his or her acts), and that he recklessly placed the occupants of the vehicles in danger of death or bodily injury, HRS § 708-820(1)(a).
(4) There was substantial evidence that Masaoka recklessly placed Quilit in danger of death or serious bodily injury. HRS § 707-714. Quilit testified that he heard a vehicle "revving," saw the van "barreling right through the lanes" toward him, and that he "just had enough time to jump off" the motorcycle. Quilit further testified that if he "hadn't dropped [his] bike and jumped off," he would have "definitely" been struck by the van. He also felt a "gush of . . . wind" as the van passed him, and observed a car door fly over him. Amundson testified that he chose not to move his vehicle in order to protect Quilit from the approaching van. Sergeant Gionson also saw Masaoka "go straight at that motorcycle guy[,]" who "leaped to the left to avoid being hit by the van. He had to abandon his bike." Looking at the evidence in the light most favorable to the State, Richie, 88 Hawai`i at 33, 960 P.2d at 1241, this testimony was sufficient to support Masaoka's conviction for reckless endangering in the second degree.
Therefore, the May 21, 2007 Judgment of Conviction and Sentence entered in the Circuit Court of the First Circuit is hereby affirmed.
NOTES
[1] The Honorable Steven S. Alm presided.
[2] HRS § 703-300 (1993) defines "believes" as "reasonably believes."
[3] At one point during the interview, Masaoka was asked why he didn't stop when the officers told him to put his hands up, and he responded, "Because I know I had the warrant, [a] no-bail warrant on me." When he was asked the same question again later in the interview, he said, "Because I was scared." In closing argument, defense counsel argued that Masaoka "wanted to get out of there, because he had a warrant [that] was going to require that he go back into custody if the police caught him."