FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ASHFORD KAIPO SPENCER,
*Defendant-Appellant*.

No. 12-10078

D.C. No.
1:10-cr-00566-JMS-1

OPINION

Appeal from the United States District Court
for the District of Hawaii
J. Michael Seabright, District Judge, Presiding

Argued and Submitted
February 13, 2013—Honolulu, Hawaii

Filed July 29, 2013

Before: Susan P. Graber, Jay S. Bybee,
and Morgan Christen, Circuit Judges.

Opinion by Judge Bybee

## SUMMARY[*]

### Criminal Law

Affirming a sentence, the panel held that because the risks involved in criminal property damage in the first degree under Hawaii Revised Statutes § 708-820(1)(a) present a serious potential risk of physical injury to another, and that risk is similar to the risks involved in arson and burglary in the ordinary case, a conviction under § 708-820(1)(a) is categorically a crime of violence under the residual clause of § 4B1.2(a)(2), and the defendant is thus subject to the career offender enhancement under U.S.S.G. § 4B1.1.

The panel held that the defendant's claim that § 4B1.2(a)(2)'s residual clause is unconstitutionally vague is foreclosed by Supreme Court precedent.

### COUNSEL

Pamela O'Leary Tower (argued), Law Office of Pamela O'Leary Tower, Kenwood, California; Sheryl Gordon McCloud, Law Offices of Sheryl Gordon McCloud, Seattle, Washington, for Defendant-Appellant.

Chris A. Thomas (argued), Assistant United States Attorney; Florence T. Nakakuni, United States Attorney, District of Hawaii, Honolulu, Hawaii, for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

BYBEE, Circuit Judge:

Ashford Kaipo Spencer was convicted of two federal drug-trafficking felonies. At sentencing, the district court determined that Spencer was a "career offender" under § 4B1.1 of the Sentencing Guidelines because Spencer had two prior convictions for "crimes of violence," as defined in § 4B1.2(a). In making this determination, the district court applied the "categorical approach" to conclude that Spencer's prior conviction for criminal property damage in the first degree under § 708-820(1)(a) of the Hawaii Revised Statutes constituted a conviction for a "crime of violence."

On appeal, Spencer argues that the district court erred in sentencing him as a career offender because § 708-820(1)(a) is not a crime of violence as defined by the Sentencing Guidelines. In the alternative, Spencer argues that the "residual clause" of the definition of "crime of violence" contained in § 4B1.2(a)(2), which the district court concluded applied to him, is unconstitutionally vague.

We agree with the decision of the district court, and therefore hold that § 708-820(1)(a) is categorically a crime of violence under the residual clause of § 4B1.2(a)(2) of the Sentencing Guidelines.[1] Spencer's claim that § 4B1.2(a)(2)'s residual clause is unconstitutionally vague is foreclosed by Supreme Court precedent.

---

[1] Since we conclude that § 708-820(1)(a) is categorically a crime of violence, we need not apply the modified categorical approach.

## I.    FACTS AND PROCEDURAL HISTORY

In 2010, Spencer was convicted of two federal counts of felonious drug trafficking. The U.S. Probation Office originally recommended in its draft Presentence Investigation Report (PIR) that Spencer be treated as a "career offender" under § 4B1.1 of the Sentencing Guidelines, based on Spencer's two prior felony convictions for "crimes of violence"—(1) kidnaping and robbery in the second degree, and (2) criminal property damage in the first degree.

The only prior conviction at issue here is Spencer's conviction for criminal property damage in the first degree under § 708-820(1)(a) of the Hawaii Revised Statutes. Haw. Rev. Stat. § 708-820(1)(a) (1996).

Spencer objected to the categorization of his § 708-820(1)(a) criminal property conviction as a crime of violence. In response to Spencer's objections, the U.S. Probation Office revised its position in its final PIR, recommending that § 708-820(1)(a) not be classified as a crime of violence and that Spencer not be treated as a career offender. The district court, however, disagreed. At sentencing, the district court concluded that Spencer's § 708-820(1)(a) conviction for criminal property damage categorically constituted a crime of violence, as defined in § 4B1.2(a)(2) of the Sentencing Guidelines, and held that Spencer's prior convictions rendered him a "career offender" under § 4B1.1.

Applying the sentencing enhancement based on Spencer's status as a career offender, the district court determined that the sentencing range dictated by the Sentencing Guidelines was 360–480 months. Without the "career offender" finding, the Guidelines range would have been 151–188 months. The

district court imposed a sentence of 204 months in prison, significantly below the Guidelines range given the "career offender" finding. Spencer timely appealed.

## II. DISCUSSION

On appeal, Spencer argues that his § 708-820(1)(a) conviction was not a conviction for a crime of violence, and claims that he should not have been sentenced as a "career offender" under the Sentencing Guidelines. Spencer also argues that the residual clause of the definition of "crime of violence," contained in § 4B1.2(a)(2) of the Sentencing Guidelines, is unconstitutionally vague. We disagree.[2]

### A. Career Offender Claim

As relevant here, the Sentencing Guidelines classify a defendant as a "career offender" if he "has at least two prior felony convictions of . . . a crime of violence." U.S.S.G. § 4B1.1(a). Section 4B1.2(a) of the Sentencing Guidelines defines a "crime of violence" as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

---

[2] We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the district court's determination that a conviction constitutes a "crime of violence" under § 4B1.2(a) of the Sentencing Guidelines de novo. *United States v. Crews*, 621 F.3d 849, 851 (9th Cir. 2010). We also review de novo whether a statute is unconstitutionally vague. *United States v. Clark*, 912 F.2d 1087, 1088 (9th Cir. 1990).

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a).

At the time of Spencer's conviction in 2001, Hawaii defined criminal property damage in the first degree as follows:

> A person commits the offense of criminal property damage in the first degree if . . . [t]he person intentionally damages property and thereby recklessly places another person in danger of death or bodily injury . . . .

Haw. Rev. Stat. § 708-820(1)(a) (1996).

The district court held, and both parties agree, that Spencer's prior § 708-820(1)(a) conviction for criminal property damage in the first degree does not qualify as a conviction involving the "use, attempted use, or threatened use of physical force against the person of another" as required by § 4B1.2(a)(1), or as a conviction for one of specific offenses listed in § 4B1.2(a)(2): "burglary of a dwelling, arson, or extortion, [or a crime that] involves use of explosives." Thus, the question on appeal is whether Spencer's conviction under § 708-820(1)(a) qualifies as a

conviction for a crime of violence under § 4B1.2(a)'s residual clause, which includes crimes that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another."

### 1.  Legal Framework

"We use the categorical approach . . . to determine whether a defendant's prior conviction satisfies the Guidelines definition of a crime of violence." *United States v. Crews*, 621 F.3d 849, 851 (9th Cir. 2010). Under the categorical approach:

> we look only to the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction. That is, we consider whether the *elements of the offense* are of the type that would justify its inclusion within the [sentence-enhancing category], without inquiring into the specific conduct of this particular offender.

*James v. United States*, 550 U.S. 192, 202 (2007) (internal quotation marks and citation omitted). It is not "requir[ed] that every conceivable factual offense covered by a statute [of conviction] must necessarily" fit into the sentence-enhancing category; "[r]ather, the proper inquiry is whether the conduct encompassed by the elements of the offense [of conviction],

*in the ordinary case*," fit into the sentence-enhancing category.[3] *Id.* at 208 (emphasis added).

Based solely on the language of § 708-820(1)(a) and the residual clause in § 4B1.2(a)(2), "intentionally damag[ing] property and thereby recklessly plac[ing] another person in danger of death or bodily injury," Haw. Rev. Stat. § 708-820(1)(a) (1996), would seem, in the ordinary case, to "involve[ ] conduct that presents a serious potential risk of physical injury to another," U.S.S.G. § 4B1.2(a)(2), regardless of Spencer's specific conduct in violating § 708-820(1)(a). But the Supreme Court's precedent dictates that the analysis is not so straightforward. The Court has interpreted the nearly identical residual clause of the definition of "violent felony" in the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B), four times in recent years. *See Sykes v. United States*, 131 S. Ct. 2267 (2011) (holding that knowing or intentional flight from law enforcement by vehicle under Indiana law is a violent felony under ACCA); *Chambers v. United States*, 555 U.S. 122 (2009) (holding that failure to report to prison under Illinois

---

[3] The Supreme Court recently framed the categorical approach as viewing "the offense[] . . . in the abstract[] to see whether the . . . state offense necessarily involved facts" meeting the definition in the federal statute (here the Sentencing Guidelines definition of "crime of violence"), with the caveat that there must be "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the [federal definition]." *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684–85 (2013) (internal quotation marks and alterations omitted); *see also Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). We are not sure how a "realistic probability" standard might differ, if at all, from looking at the "ordinary case." But we apply the "ordinary case" standard here because the Court has applied the "ordinary case" standard in cases similar to ours. *See, e.g.*, *Sykes v. United States*, 131 S. Ct. 2267, 2278–79 (2011).

law is not a violent felony under ACCA); *Begay v. United States*, 553 U.S. 137 (2008) (holding that driving under the influence of alcohol under New Mexico law is not a violent felony under ACCA); *James*, 550 U.S. 209 (holding that attempted burglary under Florida law is a violent felony under ACCA). These opinions make clear that interpretation of ACCA's residual clause must be guided not only by the language of the residual clause itself, but also by the offenses enumerated in ACCA's "violent felony" definition just before the residual clause. *See Sykes*, 131 S. Ct. at 2273; *Chambers*, 555 U.S. at 127–29; *Begay*, 553 U.S. at 142–44; *James*, 550 U.S. at 203. Since we make "no distinction between the terms 'violent felony' [as defined in the ACCA] and 'crime of violence' [as defined in § 4B1.2(a)(2) of the Sentencing Guidelines] for purposes of interpreting the residual clause[s]," *Crews*, 621 F.3d at 852 n.4; *see also id.* at 855–56, the enumerated offenses that precede the residual clause in the "crime of violence" definition in the Guidelines must guide our interpretation of the residual clause in § 4B1.2(a)(2) as well.

We set out the framework for analyzing whether a conviction under a state statute, such as § 708-820(1)(a), is a conviction for a "crime of violence" in *United States v. Park*, 649 F.3d 1175 (9th Cir. 2011). For the conviction to constitute a conviction for a crime of violence, "[f]irst, the 'conduct encompassed by the elements of the offense, in the ordinary case,' must 'present[] a serious potential risk of physical injury to another,'" *id.* at 1177–78 (quoting *James*, 550 U.S. at 208), and "[s]econd, the state offense must be 'roughly similar, in kind as well as in degree of risk posed' to those offenses enumerated at the beginning of the residual clause—burglary of a dwelling, arson, extortion, and crimes

involving explosives,'" *id.* at 1178 (quoting *Begay*, 553 U.S. at 143).

The inquiry under *Park*'s first prong is straightforward. But the second requirement—whether the state offense is "'roughly similar, in kind as well as in degree of risk posed' to those offenses enumerated at the beginning of the residual clause," *id.* at 1178 (quoting *Begay*, 553 U.S. at 143)—is more complicated, and must be addressed in light of the Supreme Court's quartet of ACCA cases.

Beginning in *James*, the Court held that this second inquiry should focus on whether the risk posed by the state offense "is *comparable* to that posed by its closest analog among the enumerated offenses." *James*, 550 U.S. at 203 (emphasis added). Under this test, the Court explained, "it would be sufficient to establish . . . that the unenumerated offense presented at least as much risk as one of the enumerated offenses." *Id.* at 210. But in *Begay*, the Court did not apply the "closest analog" test. *See Begay*, 553 U.S. at 148–49 (Scalia, J., concurring in the judgment). Rather, after assuming that the state offense of driving under the influence "presents a serious potential risk of physical injury to another," *Begay*, 553 U.S. at 141 (maj. op.), the Court concluded that the state offense was not categorically a violent felony under the ACCA because it "differs from the example crimes—burglary, arson, extortion, and crimes involving the use of explosives" since it does not "involve purposeful, violent, and aggressive conduct," *id.* at 144–45 (internal quotation marks omitted). Then, in *Chambers*, the Court again ignored the "closest analog" test set forth in *James*, opting to apply *Begay*'s "purposeful, violent, and aggressive conduct" formulation instead. *Chambers*, 555 U.S. at 128.

Although *Begay* and *Chambers* seem to suggest that the "purposeful, violent, and aggressive" test is dispositive as to the second requirement set forth in *Park*, the Court disparaged this reading in its most recent ACCA case, *Sykes*. In *Sykes*, the Court asserted that the dispositive inquiry is the level of risk posed by the prior conviction at issue as compared to the level of risk posed by the enumerated offenses. *Sykes*, 131 S. Ct. at 2275–76. The Court noted that "[i]n many cases the purposeful, violent, and aggressive inquiry will be redundant with the inquiry into risk," and explained that the result in *Begay* was dependent on the nature of the state offense at issue there, namely, that driving under the influence is a strict liability crime. *Id.* In contrast, since the state offense of vehicle flight in *Sykes* required knowing or intentional conduct, "risk levels provide[d] a categorical and manageable standard that suffice[d] to resolve the case." *Id.* Thus, the Court in *Sykes* held that *Begay*'s "purposeful, violent, and aggressive formulation" is only dispositive in cases involving a strict liability, negligence, or recklessness offense.[4] It does not apply to intentional crimes.[5]

---

[4] The majority of our sister circuits have read *Sykes* as we do here. *See, e.g.*, *United States v. Bartel*, 698 F.3d 658, 662 (8th Cir. 2012) ("The [*Sykes*] Court held . . . that only crimes akin to 'strict-liability, negligence, and recklessness crimes' required the 'purposeful, violent, and aggressive formulation.'"), *cert. denied*, 133 S. Ct. 1481 (2013); *Harrington v. United States*, 689 F.3d 124, 135–36 (2d Cir. 2012) ("In *Sykes*, the Court clarified that in cases involving intentional criminal conduct, the focus of judicial inquiry should remain on the risk assessment specific in the ACCA's text . . . ."); *United States v. Chitwood*, 676 F.3d 971, 979 (11th Cir. 2012) ("*Sykes* makes clear that *Begay*'s 'purposeful, violent, and aggressive' analysis does not apply to offenses that are not strict liability, negligence, or recklessness crimes . . . ."), *cert. denied*, 133 S. Ct. 288 (2012); *United States v. Meeks*, 664 F.3d 1067, 1070 (6th Cir. 2012) ("The Supreme Court has recently suggested that *Begay*'s 'purposeful, violent, and aggressive conduct' inquiry should be limited to crimes based on strict

## 2.  Analysis

### a.  Serious potential risk of physical injury.

The first requirement is satisfied in Spencer's case. It seems relatively apparent that "intentionally damag[ing] property and thereby recklessly plac[ing] another person in danger of death or bodily injury," Haw. Rev. Stat. § 708-820(1)(a) (1996), in the ordinary case, "involves conduct that presents a serious potential risk of physical injury to another," U.S.S.G. § 4B1.2(a)(2). Although the two provisions are not identical, and the Sentencing Guidelines use the word "serious" while § 708-820(1)(a) does not, "metaphysical

---

liability, negligence, and recklessness . . . ."); *United States v. Rodriguez*, 659 F.3d 117, 119–20 (1st Cir. 2011) ("Where the prior felony has a 'stringent *mens rea* requirement,' . . . *Begay* provides no shelter."); *United States v. Smith*, 652 F.3d 1244, 1248 (10th Cir. 2011) ("Where the felony at issue is 'not a strict liability, negligence, or recklessness crime' the test is not whether the crime was 'purposeful, violent, and aggressive' but whether it is 'similar in risk to the listed crimes.'"). *But see United States v. Mobley*, 687 F.3d 625, 634 (4th Cir. 2012) ("While the Supreme Court [in *Sykes*] focused primarily on the risk inherent in the act of fleeing arrest, it nevertheless recognized the relevance of the *Begay* [purposeful, violent, and aggressive inquiry] . . . ."), *cert. denied*, 133 S. Ct. 888 (2013).

[5] In *Park*, which involved the intentional crime of first-degree burglary, we emphasized the "purposeful, violent, and aggressive" formulation in conducting the second step of the categorical analysis. 649 F.3d at 1180. Although *Park* could be read to require application of the *Begay* formulation as part of the second step of the categorical test, the better reading of *Park* is that it used the "purposeful, violent, and aggressive" test only because it recognized, as the Supreme Court did in *Sykes*, that this analysis tends to produce the same result as the inquiry into risk. *Id.* at 1180 (explaining that "'[i]n many cases the purposeful, violent, and aggressive inquiry will be redundant with the inquiry into risk'" (quoting *Sykes*, 131 S. Ct. at 2275)).

certainty" of physical injury is not required under the definition in the Sentencing Guidelines. *James*, 550 U.S. at 207. Rather, the "residual provision speaks in terms of a 'potential risk,'" and "potential" and "risk" are "inherently probabilistic concepts." *Id.* "Indeed, the combination of the two terms suggests that Congress intended to encompass possibilities even more contingent or remote than a simple 'risk' . . . ." *Id.* at 207–08.

In contrast, the Hawaiian statutory provision requires the conduct in question to *actually* and *recklessly* place another person in danger of death or bodily injury. At least some risk of death or bodily injury must actually be created, and the risk must be significant enough that the creation of the risk is reckless, meaning that the defendant "consciously disregards a substantial and unjustifiable risk that his conduct will cause such a result." Haw. Rev. Stat. § 702-206(3)(c). Moreover, a risk is "substantial and unjustifiable" under the statute only if "the disregard of the risk involves a gross deviation from the standard of conduct that a law-abiding person would observe in the same situation." *Id.* § 702-206(3)(d).**[6]**  Of course, the "in danger of" language in § 708-820(1)(a) is also probabilistic, but conduct that *actually* places another person in sufficient danger of death or bodily injury to be deemed reckless under Hawaiian law—such that there is a conscious disregard of risk in gross deviation from the standard of conduct that a law-abiding person would observe—will, in the ordinary case, at least present a "serious potential risk of physical injury to another."

---

**[6]** These provisions do not seem to have been amended since 1986, so they applied at the time of Spencer's § 708-820(1)(a) offense.

b.  **Similarity of risk posed by state offense to the enumerated offenses in U.S.S.G. § 4B1.2(a)(2).**

The second requirement—that the state offense be "'roughly similar, in kind as well as in degree of risk posed' to those offenses enumerated at the beginning of the residual clause,'" *Park*, 649 F.3d at 1178 (quoting *Begay*, 553 U.S. at 143)—presents a more difficult question. Because a conviction under § 708-820(1)(a) requires *intentional* damage to property, in light of *Sykes*, our inquiry must be focused on risks. *See Sykes*, 131 S. Ct. at 2275–76; *Park*, 649 F.3d at 1178. That is, the question we must answer under the second prong is whether intentional property damage under § 708-820(1)(a), which involves a conscious disregard of substantial or unjustifiable risk that the damage will put someone in danger of death or bodily injury, involves risks similar to burglary, extortion, arson, and crimes involving use of explosives in the ordinary case. *See Sykes*, 131 S. Ct. at 2277. We hold that it does.

The risk involved in Hawaii's offense of criminal property damage in the first degree, under § 708-820(1)(a), is comparable to the risk involved in the enumerated offense of arson. The Supreme Court has indicated that arson is deemed a violent felony because it involves the "intentional release of a destructive force dangerous to others." *Sykes*, 131 S. Ct. at 2273. Likewise, the crime of property damage in the first degree requires intentional destruction of property, which necessarily involves the intentional release of a destructive force; § 708-820(1)(a) is just less clear about what that destructive force is. Although destroying property could potentially involve a force much less destructive or dangerous than fire, the language of § 708-820(1)(a) specifically

requires that the force put a person "in danger of death or bodily injury." As explained, in so doing the perpetrator must consciously disregard a risk of death or bodily injury that is substantial or unjustifiable—in gross deviation from the standard a law-abiding person would follow. This is more risk than the offense of arson requires.

As defined in *Begay*, arson is "causing a fire or explosion with 'the purpose of,' *e.g.*, 'destroying a building of another' or 'damaging any property to collect insurance.'" *Begay*, 553 U.S. at 145 (quoting ALI Model Penal Code § 220.1(1) (1985)) (alterations omitted). Similarly, we have described the modern, generic definition of arson as "willful and malicious burning of property." *United States v. Velasquez-Reyes*, 427 F.3d 1227, 1230 (9th Cir. 2005) (internal quotation marks omitted); *see also United States v. Doe*, 136 F.3d 631, 634 (9th Cir. 1998). These definitions of arson do not require that a person actually or recklessly be placed in danger of death or bodily injury. Rather, arson is classified as a dangerous felony because we know that fire is generally dangerous to others, *see Sykes*, 131 S. Ct. at 2273, and common sense indicates that setting fire to someone's home or a building increases the risk that a person will be injured by the fire.

In contrast, § 708-820(1)(a) includes the risk element in the statute—the intentional release of the destructive force damaging property must "place[] another person in danger of death or bodily injury." Like vehicular flight in *Sykes*, criminal property damage in the first degree is similar to arson because it "makes a lack of concern for the safety of property and persons . . . an inherent part of the offense," such that the "perpetrator's indifference to the[] collateral

consequences [of his actions] has violent—even lethal—potential for others." *Id.*

The structure of Hawaii's criminal property damage scheme also indicates that § 708-820(1)(a) was intended to prohibit actions creating risks comparable to, and even greater than, some crimes of arson. At the time Spencer was convicted, criminal property damage was divided into three degrees in Hawaii: it was criminal property damage in the first degree to "*intentionally* damage property" in a way that "*recklessly places another person in danger of death or bodily injury*," Haw. Rev. Stat. § 708-820(1)(a) (1996) (emphases added); it was criminal property damage in the second degree to "*intentionally* damage[] the property of another, without the other's consent, *by the use of widely dangerous means*," *id.* § 708-821(1)(a) (emphases added); and it was criminal property damage in the third degree to "*recklessly* damage[] the property of another, without the other's consent, *by the use of widely dangerous means*," *id.* § 708-822 (1)(a) (emphasis added). The second and third degree crimes did not require that the property damage put someone in "danger of death or bodily injury," but rather, required that the property damage be accomplished through "widely dangerous means." "Widely dangerous means" was defined to include "explosion, fire, flood, avalanche, collapse of building, poison gas, radioactive material, or any other material, substance, force, or means capable of causing potential widespread injury or damage." *Id.* § 708-800.

The current Commentary to Hawaii's criminal property damage scheme explains that the legislature's objective in creating the criminal property damage scheme was to "provide a unified treatment of offenses relating to property damage" and "[d]ispense[] with . . . archaic labels such as

'arson.'" Haw. Rev. Stat. §§ 708-820 to -823 cmt. Under this unified scheme, criminal property damage in the *second degree* was intended to "incorporate[] the traditional offense of arson," *id.*,[7] since it prohibits intentional destruction of property by means of fire, *see id.* § 708-821(1)(a); *see also id.* § 708-800. The second degree offense also broadened the crime of arson to include similarly destructive, "widely dangerous means." *See id.* § 708-821(1). The "widely dangerous means" of "explosion, . . . flood, avalanche, collapse of building, poison gas, radioactive material" are arguably as dangerous as fire,[8] and the residual clause of the "widely dangerous means" definition requires that any other force involved in destroying property be "capable of causing potential widespread injury or damage." *Id.* at § 708-800. Thus, the *second degree* offense criminalized the traditional

---

[7] Although this is the current version of the Commentary, it is pertinent to the 1996 statute under which Spencer was convicted because it explains the history of the criminal property damage scheme. Curiously, the current Commentary says that criminal property damage in the second degree incorporates the offense of arson. This makes little sense because the current version of property damage in the second degree, § 708-821(1), states that the damage to the property must be committed "by means other than fire" and the current statutory scheme has separate provisions for arson. *See* Haw. Rev. Stat. § 708-8251 to -8254. The 1996 statute under which Spencer was convicted, however, did not exclude fire, and the provisions criminalizing arson separately were not added until 2006. *See* 2006 Haw. Sess. Laws 181. Thus, it seems likely that in stating that § 708-821(1) incorporated the traditional offense of arson, the Commentary was actually referring to the earlier versions of the statute, like the one under which Spencer was convicted.

[8] Notably, property damage in the second degree also includes intentional damage by means of explosives—similar to the enumerated offense of a crime "involv[ing] the use of explosives." U.S.S.G. § 4B1.2(a)(2).

offense of arson and offenses involving risks comparable to arson.**[9]**

The fact that criminal property damage in *the second degree* incorporated the traditional offense of arson and criminalized other offenses involving similarly destructive forces with risks comparable to arson strongly implies that criminal property damage in *the first degree* involves risks that are at least comparable to, if not greater than, some crimes of arson. Crimes are generally divided into degrees based on levels of severity. Although this might not necessarily mean that the risk of harm is greater in a first degree crime than in a second degree crime, the Commentary to the statute explains that this is the case for criminal property damage: the degrees of criminal property damage are "gradations of penalty depending both on: (1) the culpability of the actor (*i.e.*, whether the actor acts intentionally or merely recklessly), [and] (2) the means used (*i.e.*, whether the means present potential danger of widespread damage to persons or property)." Haw. Rev. Stat. §§ 708-820 to -823 cmt. Criminal property damage in the first degree clearly involves greater risk of harm to persons than does the second degree crime because it expressly requires that a person actually be in danger of injury. The Commentary explains:

> Criminal property damage in the first degree . . . presents the most aggravated form of property damage: damage which carries with it an incidental risk of danger to the person. Under former formulations of

---

**[9]** We express no view on whether the second degree offense constitutes a "crime of violence" under U.S.S.G. § 4B1.2(a).

property offenses, arson, which is sometimes regarded as an offense against the person, was regarded as the most serious property offense deserving the most severe sanction. Yet actual risk of danger to another was not required for conviction of arson, and it is possible to think of many cases in which, although fire is not the method used in causing the damage, actual risk to the safety of another would result from property damage.

*Id.* The intent behind § 708-820(1)(a) was to separate the very worst forms of arson—those actually endangering a person—as well as other crimes involving damage to property that created a similar risk. Thus, not only does § 708-820(1)(a) criminalize risks comparable to arson, it criminalizes the very worst forms of arson, those with actual risk of injury.

Criminal property damage in the first degree thus involves risks that are, at least, comparable to arson.

In addition to arson, criminal property damage in the first degree also involves risk comparable to the enumerated crime of burglary. Burglary "is dangerous because it can end in confrontation leading to violence." *Sykes*, 131 S. Ct. at 2273; *see also James*, 550 U.S. at 199 (reasoning that "the most relevant common attribute of [all of] the enumerated offenses . . . is . . . that all of these offenses, while not technically crimes against the person, nevertheless create significant risks of bodily injury or confrontation that might result in bodily injury"). With § 708-820(1)(a), criminal property damage in the first degree, putting someone in danger of injury by destroying property creates a clear "possibility of a face-to-

face confrontation" because the person who is threatened with injury might defend himself or retaliate against the perpetrator. *James*, 550 U.S. at 203. Moreover, with criminal property damage, there is more than just "the possibility [that there is in burglary] that an innocent person might appear while the crime is in progress," *id.*; since criminal property damage requires that a person is actually put at risk of death or bodily injury, a person must actually be nearby. In that sense, criminal property damage "presents more certain risk as a categorical matter than burglary." *Sykes*, 131 S. Ct. at 2274. "Unlike burglaries, [criminal property damage] by definitional necessity," *id.*, occurs in a way that "places another person in danger of death or bodily injury," Haw. Rev. Stat. § 708-820(1)(a). Thus, criminal property damage in the first degree involves risks comparable to burglary in the ordinary case.

Admittedly, in the ACCA cases considered by the Supreme Court, it was much easier to conceptualize the "ordinary case" for the crimes at issue—attempted burglary (*James*), DUI (*Begay*), failure to report to prison (*Chambers*), and vehicle flight (*Sykes*). With this ordinary case in mind, additional information about the level of risk involved could be gleaned from common experience. *See, e.g.*, *Sykes*, 131 S. Ct. at 2274 ("It is well known that when offenders use motor vehicles as their means of escape they create serious potential risks of physical injury to others."); *James*, 550 U.S. at 204 ("[T]he risk posed by an attempted burglary . . . may be even greater than that posed by a typical completed burglary. . . . [A]ttempted burglaries often [involve outside intervention]; indeed, it is often just such outside intervention that prevents the attempt from ripening into completion."). The more monolithic nature of the crimes at issue in the ACCA cases also enabled the use of statistical studies to

compare risk levels. *See, e.g.*, *Sykes*, 131 S. Ct. at 2274 (discussing an International Association of Chiefs of Police study on police pursuits and resulting injuries); *Chambers*, 555 U.S. at 129–30 (discussing a United States Sentencing Commission report containing statistics on violent activity during prison escapes and failure-to-report situations); *see also Sykes*, 131 S. Ct. at 2274 ("Although statistics are not dispositive, here they confirm the commonsense conclusion that Indiana's vehicular flight crime is a violent felony."). However, envisioning the "ordinary case" in the abstract is less crucial where, as here, the risk of danger to another person is built into the statute because the crime will involve the level of risk required by the statute every time and not just "ordinarily." Indeed, the Second Circuit held that a state conviction for unlawful restraint categorically fell within the ACCA residual clause, even though it is hard to "know how first-degree unlawful restraint is committed in the 'ordinary case,'" because the text of the state statute "effectively tracks the language of the ACCA's residual clause" by requiring that the crime exposed the victim "to a substantial risk of physical injury," and state case law confirmed that the state offense involved serious risks similar to burglary. *See Harrington v. United States*, 689 F.3d 124, 132–35 & n.6 (2d Cir. 2012).

A comprehensive survey of Hawaii cases involving convictions under § 708-820(1)(a) also confirms that criminal property damage in the first degree involves risks of injury comparable to the enumerated offenses in the ordinary case.[10]

---

[10] Although some of these defendants were prosecuted or convicted under a slightly different version of the statute than Spencer was, all of these statutes required the same basic elements of intentional property damage that places another person in risk of death or bodily injury. The

A large number of the Hawaii cases actually involved arson or some form of intentionally setting fire to property. *See, e.g.*, *State v. Ganal*, 917 P.2d 370, 375–76 (Haw. 1996) (defendant set fire to his place of employment, a plant that operates twenty-four hours a day with people working at all hours); *State v. Baker*, 691 P.2d 1166, 1167 (Haw. 1984) (per curiam) (defendant set a boarding house on fire, almost completely destroying it); *State v. Sadino*, 642 P.2d 534, 535 (Haw. 1982) (per curiam) (defendant set a fire to a hotel room, killing two men); *State v. Yamamoto*, 216 P.3d 127, at *1 (Haw. Ct. App. 2009) (unpublished) (defendant, who wielded a spear gun, shattered the windows of a car with a hammer or a stick while a family was in it, and then squirted gasoline through the shattered window on a man sitting in the driver's seat, and tossed a book of matches inside, setting the man and the car on fire); *State v. Armstrong*, 149 P.3d 811, at *1–2 (Haw. Ct. App. 2006) (unpublished) (defendant lit his girlfriend's parked car on fire, "engulf[ing it] in flames" while four people were standing across the street). The risks involved in these cases are obviously comparable to the risks involved in the enumerated offense of arson.

Many of the Hawaii cases also involved vehicular flight and violent police confrontations. *See, e.g.*, *State v. Plichta*, 172 P.3d 512, 516 (Haw. 2007) (defendant accelerated a van "vigorously . . . into [a] police cruiser" that was blocking his exit twice, knocking the car back "roughly fifteen feet"); *State v. Anthony*, No. 29998, 2012 WL 540092, at *3 (Haw. Ct. App. Feb. 17, 2012) (unpublished) (defendant attempting

---

only material difference in the statute over time is that after Spencer's conviction, in 2006, § 708-820(1)(a) was amended to exclude damage by means of fire and a separate arson statute was passed. *See* 2006 Haw. Sess. Laws 181.

to escape police drove a truck into a police officer's vehicle three times while the officer was in the car); *State v. Masaoka*, 196 P.3d 324, at *3 (Haw. Ct. App. 2008) (unpublished) (defendant attempting to escape police "barrel[ed]" between the middle and fast lanes on the freeway in a van, side swiping and hitting thirteen vehicles, several of which "sustained significant damage"). As the Court held in *Sykes*, vehicular flight is similar to burglary because it can end in confrontation leading to violence since flight demands pursuit. 131 S. Ct. at 2273–74. Moreover, "[b]etween the confrontations that initiate and terminate the incident, the intervening pursuit creates high risks of crashes." *Id.* at 2274. Indeed, vehicular flight "presents more certain risk as a categorical matter than burglary" because, "[u]nlike burglaries, vehicle flights from an officer by definitional necessity occur when police are present . . . and are effected with a vehicle that can be used in a way to cause serious potential risk of physical injury to another." *Id.*

The remaining Hawaii cases consisted of violent confrontations involving cars. *See State v. Birdsall*, 960 P.2d 729, 730 (Haw. 1998) (defendant rammed a car with three women in it with his Jeep Cherokee); *State v. Pang*, 226 P.3d 523, at *1–2 (Haw. Ct. App. 2010) (unpublished) (defendant hit the roof of a car with a baseball bat and shattered the windows while a man was in it, threatening to kill him). These cases also involved risk of confrontation similar to burglary. *Sykes*, 131 S. Ct. at 2273–74.

Although Spencer can imagine various ways to violate the statute that involve risks that are not comparable to arson and burglary, this "does not disprove that [criminal property damage] is dangerous in the *ordinary case*. It is also possible to imagine committing [the enumerated offenses] . . . under

circumstances that pose virtually no risk of physical injury" or confrontation. *Id.* at 2281 (internal quotation marks and citation omitted, emphasis added); *see James*, 550 U.S. at 207–08. Here, the text of the statute, the statutory scheme, and Hawaii cases all confirm that criminal property damage involves risks comparable to arson and burglary in the ordinary case. Section § 708-820(1)(a) thus meets both of *Park*'s prongs.

Because the risks involved in criminal property damage in the first degree present a serious potential risk of physical injury to another, and that risk is similar to the risks involved in arson and burglary in the ordinary case, we hold that Spencer's prior conviction under § 708-820(1)(a) was a crime of violence as defined in § 4B1.2(a)(2). Spencer is thus subject to the "career offender" enhancement under § 4B1.1 of the Sentencing Guidelines.

## B. Void for Vagueness Claim

Spencer also argues that the residual clause in § 4B1.2(a)(2) of the Sentencing Guidelines is void for vagueness. This argument is foreclosed by Supreme Court precedent.

In *James*, the Court held that the residual provision in the ACCA was not unconstitutionally vague, explaining that although "ACCA requires judges to make sometimes difficult evaluations of the risks posed by different offenses," it "is not so indefinite as to prevent an ordinary person from understanding what conduct it prohibits." 550 U.S. at 210 n.6. The Court reiterated this holding in *Sykes*, reasoning that although Congress's decision to "frame ACCA in general and qualitative, rather than encyclopedic, terms" resulted in a

statute that "may at times be more difficult for courts to implement, it is within congressional power to enact" laws in such a manner, and the ACCA residual clause "states an intelligible principle and provides guidance that allows a person to 'conform his or her conduct to the law.'" *Sykes*, 131 S. Ct. at 2277 (quoting *City of Chicago v. Morales*, 527 U.S. 41, 58 (1999) (plurality opinion)).

Because precedents interpreting the ACCA residual clause apply to § 4B1.2(a)(2) of the Sentencing Guidelines, *Crews*, 621 F.3d at 852 n.4, 855–56, § 4B1.2(a)(2)'s residual clause is not unconstitutionally vague.

## III.   CONCLUSION

We hold that the 1996 version of Hawaii Revised Statute § 708-820(1)(a), criminal property damage in the first degree, is categorically a crime of violence under the residual clause of § 4B1.2(a)(2) of the Sentencing Guidelines. Thus, the district court did not err in applying the "career offender" sentencing enhancement to Spencer under § 4B1.1. We also hold that Spencer's claim that the residual clause in § 4B1.2(a)(2) is unconstitutionally vague is foreclosed by Supreme Court precedent.

**AFFIRMED.**