# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3918

_____

United States of America,      *
                               *
    Plaintiff – Appellee,      *
                               *   Appeal from the United States
    v.                          *   District Court for the Western
                               *   District of Missouri.
Thomas Boaz,                    *
                               *
    Defendant – Appellant.     *

_____

Submitted: June 12, 2008
Filed: March 16, 2009

_____

Before MELLOY, ARNOLD, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

A jury convicted Thomas Monroe Boaz of two counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At sentencing, the district court determined Boaz had four prior convictions for violent felonies and was subject to the enhanced sentencing provisions of the Armed Career Criminal Act, 18 U.S.C. § 924(e). We affirm the judgment of conviction. We vacate the sentence, however, and remand for further proceedings regarding the application of § 924(e).

## I. Background

Boaz initially pleaded guilty to the present § 922(g)(1) counts after being advised that his maximum statutory sentence would be ten years' imprisonment. The district court ordered a Presentence Investigation Report ("PSR"), and the PSR alleged that Boaz was subject to the Armed Career Criminal Act, 18 U.S.C. § 924(e), and its range of imprisonment from 180 months to life. Boaz then filed a motion to withdraw his plea, and the district court granted the motion.

At trial, the parties stipulated that Boaz possessed firearms that had traveled in interstate commerce. Accordingly, the only triable issue was whether Boaz was a felon at the time he possessed the firearms. Boaz argued that this single issue involved two distinct underlying questions for submission to the jury, namely: (1) the "identification question" of whether he was the same Thomas Monroe Boaz who was the subject of prior, criminal, state-court proceedings; and (2) the "legal effect question" of whether prior, criminal, state-court proceedings (including one with a somewhat convoluted procedural history) actually had culminated in felony convictions. The government argued that only the first question, the identification question, was a question of fact appropriate for submission to the jury. The district court agreed and refused to submit the second question to the jury. The court denied Boaz's request to submit copies of state statutes to the jury to aid in interpreting state-court records for the purpose of determining the existence of a felony conviction. In effect, then, the district court determined as a matter of law that the prior, criminal, state-court proceedings had resulted in felony convictions, and the only issue tried to the jury was the identification question of whether Boaz was the same Thomas Monroe Boaz who was the subject of these prior convictions.

The government presented certified state-court records regarding three prior cases: a 1995 Arkansas case involving terroristic threatening,[1] a 1980 Arizona case involving burglary and theft,[2] and a 1975 Arizona case involving conspiracy to commit auto theft.[3] The government also presented six witnesses. The six witnesses testified as follows.

The government's first witness was a Missouri highway patrol officer who had stopped Boaz, discovered Boaz's possession of firearms, and arrested and fingerprinted Boaz in relation to the present offense. The officer identified Boaz in court and relayed an admission Boaz had made at the time of arrest. The admission was inculpatory regarding the prior Arkansas offense of terroristic threatening. The government next presented a U.S. probation officer who had researched Boaz's criminal history. This witness served as a vehicle for entering into evidence the certified, state-court records from the prior criminal cases.

Over objection, the government next presented testimony from two fingerprint experts who testified that the fingerprints taken in relation to the present offense matched fingerprints in the records for the prior offenses. Boaz objected that he was not given adequate notice or reports from these experts detailing their methodology. The district court determined, however, that the experts' methods were standard fingerprint-analysis techniques. The district court stated that Boaz had more than adequate notice regarding the experts and the standard techniques and that there had been no failure to disclose any reports.

---

[1]Ark. Code Ann. § 5-13-301 (West 1995).

[2]Ariz. Rev. Stat. Ann. §§ 13-1506, 13-1802 (1978).

[3]Ariz. Rev. Stat. Ann. § 13-672 (1974).

-3-

The government next presented the testimony of an ATF agent assigned to work with the Missouri Highway Patrol. The ATF agent explained the handling of records and offered an explanation for an apparent infirmity involving white-out and numbers on a fingerprint card. Finally, the government presented an Arkansas probation officer who identified Boaz in court and testified that she had supervised Boaz following his Arkansas conviction for terroristic threatening.

The certified court records contained ample identifying information, including social security numbers, FBI numbers, Boaz's date of birth, the names of family members, and detailed physical descriptions including a listing of tattoos. The arresting officer for the present offense and the Arkansas probation officer identified Boaz in court, and the fingerprint experts tied the prints from Boaz's present arrest to the prior convictions. In short, the identification evidence was overwhelming.

Boaz's primary argument at trial was that the judgments themselves from these prior cases needed to contain all of the identifying information. According to Boaz, it was impermissible to look behind the judgments to find additional identifying information elsewhere in prior court records. Boaz specifically objected to using documents that were not initially produced by a court. The district court rejected Boaz's theory and overruled Boaz's objections to the evidence, and the jury found him guilty.

At sentencing, the government alleged four prior violent felony convictions: terroristic threatening, conspiracy to commit auto theft, and burglary (all as asserted at trial), and a 1974 Arizona conviction for exhibiting a weapon other than in self-defense.[4] Boaz challenged use of the 1974 Arizona conviction on the basis of inadequate identification. The government presented three documents regarding this prior offense: a charging document, a plea agreement, and a judgment and sentencing

_____

[4]Ariz. Rev. Stat. Ann. § 13-916 (1974).

-4-

document. These documents listed Boaz's name, but they did not contain any additional identifying information. The court then found that Boaz was, in fact, the subject of the 1974 conviction. The court based its ruling largely on a mutual mistake by both parties' attorneys: the attorneys had stated that the trial record contained fingerprint-card evidence for the 1974 offense. In fact, the trial record contained fingerprint evidence for other offenses but not for the 1974 Arizona offense.

Without application of § 924(e), Boaz's advisory Guidelines sentencing range would have been 41 to 51 months' imprisonment. With the application of § 924(e), his advisory range became 188 to 235 months' imprisonment. The district court sentenced him to 190 months. Boaz appeals.

## II. Discussion

### A. Issues Surrounding the § 922(g)(1) Conviction

Boaz challenges his § 922(g)(1) conviction, arguing the district court abused its discretion in its evidentiary rulings. In addition, he challenges the sufficiency of the evidence, and he renews his claim that the jury should have reviewed the Arkansas court records, statutes, and case law to determine whether a conviction had been entered in the 1995 Arkansas case. We find no merit in his arguments. The court did not abuse its discretion as to any evidentiary rulings, United States v. Anderson, 446 F.3d 870, 874 (8th Cir. 2006) (standard of review), and the evidence was more than sufficient to prove Boaz had been subject to at least one prior felony conviction. See 18 U.S.C. § 922(g)(1).

Boaz characterizes the issue surrounding the Arkansas conviction as a constitutional deprivation of a jury trial on an element of his offense. Without belaboring the point, we note that the Arkansas proceedings that gave rise to this conviction were somewhat protracted and convoluted. Essentially, however, they

amounted to a deferred acceptance of a guilty plea or a suspended imposition of sentence followed by probation, a subsequent probation violation, and the eventual entry of a judgment of conviction, all pursuant to Act 346 of 1975, codified at Ark. Code Ann. § 16-93-303.[5]

We have repeatedly held that whether a particular conviction qualifies as a predicate felony for the purpose of § 922(g) is a question of law for the district court. See, e.g., United States v. Howell, 531 F.3d 621, 623–24 (8th Cir. 2008) (stating that whether a predicate conviction qualifies as "a misdemeanor crime of domestic violence" under 18 U.S.C. § 922(g)(9) was a legal question for the court, not a factual question for the jury); United States v. Stanko, 491 F.3d 408, 412 (8th Cir. 2007) (stating that whether the defendant's predicate convictions qualify under 18 U.S.C. §

---

[5]A defendant commits terroristic threatening if, "[w]ith the purpose of terrorizing another person, he threatens to cause death or serious physical injury or substantial property damage to another person." Ark. Code Ann. § 5-13-301(a)(1)(A) (1995). Boaz was indicted for repeatedly threatening to kill a woman. Boaz pleaded guilty to the offense, but the state trial court did not accept his guilty plea. Instead, the state court issued an order of probation in which the court "noted but refused to accept the Defendant's tendered plea of guilty, deferred further proceedings under Act 346 of 1975 and placed Defendant on state supervised probation for five (5) years." See id. § 16-93-303. Under Act 346 of 1975, if a defendant successfully fulfills the terms and conditions of the probation or is released by the court prior to the completion of the probation, the defendant is "discharged without court adjudication of guilt," and the court expunges the record. Id. § 16-93-303(b). Boaz, however, violated the conditions of his probation. The state trial court held a revocation-of-probation hearing and executed a document entitled, "Revocation of Probation: Judgment and Disposition Order." The Order stated, "The Defendant has violated the conditions of his probation, with the original charge of Terroristic Threatening—Class D Felony (5-13-301). . . . IT IS THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the Court that the Defendant is guilty as charged, and that he be and hereby is sentenced to continued state supervised probation as previously ordered by the Court on April 8, 1996."

921(a)(20)(A) as exclusions from the term "crime punishable by imprisonment for a term exceeding one year" was a legal question for the court, not a factual question for the jury). Here, the process of interpreting the legal effect of the prior Arkansas proceeding was simply an extension of this principle, reserving legal determinations for the court and placing only factual determinations and the ultimate determination of guilt in the hands of the jury. The district court correctly determined that the Arkansas proceedings resulted in a felony conviction when the state court found a probation violation and entered a judgment of guilt regarding the original charge of terroristic threatening.

### B. Issues Surrounding the Application of § 924(e)

#### i. Evidentiary Standard for § 924(e)

Boaz cites United States v. Bradford, 499 F.3d 910 (8th Cir. 2007), cert. denied, 128 S. Ct. 1446 (2008), for the proposition that due process may require the district court to use an evidentiary standard higher than a preponderance of the evidence in determining that he had three predicate violent felonies for purposes of § 924(e). "We review constitutional challenges to a sentence de novo." Bradford, 499 F.3d at 919. Our case law is clear that post-Booker,[6] sentencing courts can find facts enhancing a sentence under a preponderance-of-the-evidence standard. Id. In Bradford, we stated:

> One exception exists, however, for situations in which the defendant's due-process rights are implicated because the magnitude of a proposed departure dwarfs the guideline range applicable to the substantive offense of conviction. In such a case, the sentencing enhancement becomes the tail which wags the dog of the substantive offense.

---

[6]United States v. Booker, 543 U.S. 220 (2005).

Id. (quotations, citation, and alteration omitted). We further stated, however, that although "[o]ur court has often alluded to this exception, [our court] has never found a case with facts sufficient to fall within the exception." Id. at 920.

According to the PSR, Boaz's Guidelines range of imprisonment was 41–51 months before applying the sentencing enhancements under the Armed Career Criminal Act. After applying the enhancements, Boaz's Guidelines range was 188–235 months. Boaz was subject to the equivalent of a fourteen-level enhancement and over a four-fold increase in the Guidelines range. This case is similar to Bradford, where the defendant was subject to the equivalent of a twelve-level enhancement and nearly a four-fold increase in the Guidelines range. Id. In Bradford, we determined that the sentence was not high enough to require a finding based on a higher evidentiary standard than a preponderance of the evidence. Id. As we discussed in Bradford, such an increase does not rise to the level where due process could require a higher evidentiary burden. We reach the same conclusion here in connection with an increase that is similar to the increase in Bradford. This case is not so "extreme" that due process requires a higher evidentiary standard. Id.

ii. Violent Felonies to Support the Application of § 924(e)

Even applying the preponderance-of-the-evidence standard, Boaz challenges the district court's determination that § 924(e) governs his sentence. Section 924(e) applies when a defendant has violated § 922(g) and has three prior convictions for violent felonies. 18 U.S.C. § 924(e)(1). A violent felony is a felony that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." Id. § 924(e)(2)(B). The statute mandates a sentence from fifteen years to life imprisonment. Id. § 924(e)(1). We review de novo a district court's determination that a defendant's prior conviction constitutes a violent felony for the

purposes of § 924(e).  United States v. Comstock, 531 F.3d 667, 679 (8th Cir.), cert. denied, 129 S. Ct. 590 (2008).

### a.  Burglary and Terroristic Threatening

We begin by noting that the district court properly found that Boaz had been convicted of the following felonies: burglary, terroristic threatening, and conspiracy to commit theft of a motor vehicle.  The district court also properly determined that two of these prior convictions were for violent felonies.  Boaz's conviction for burglary of a structure was a violent felony.  See 18 U.S.C. § 924(e)(2)(B)(ii); Taylor v. United States, 495 U.S. 575, 599 (1990) (stating that a defendant has been convicted of burglary for § 924(e) purposes if the crime involves an "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime").  Boaz's conviction for terroristic threatening was also a violent felony.  The underlying state statute defines two separate offenses: threats of death or serious bodily injury and threats to property.  Applying the modified categorical approach as discussed in United States v. Williams, 537 F.3d 969, 972–73 (8th Cir. 2008), a review of permissible materials shows Boaz pleaded guilty to threatening to kill a woman.  This prior offense is a qualifying predicate for § 924(e) because it "has as an element the . . . threatened use of physical force against the person of another."  18 U.S.C. § 924(e)(2)(B)(i); cf. Parker v. Norris, 64 F.3d 1178, 1186 (8th Cir. 1995) (stating that the Arkansas Supreme Court upheld a jury's finding that terroristic threatening was a violent felony under state law for the purposes of a statutory aggravating circumstance in a capital murder case).

### b.  Conspiracy to Commit Auto Theft

In light of Williams, 537 F.3d at 972–73, Boaz's prior conviction for conspiring to commit auto theft is not a predicate "violent felony."  The relevant Arizona conspiracy statute authorized a term of imprisonment in excess of one year.  Ariz.

Rev. Stat. Ann. § 13-331(B) (1974) (repealed 1978). In addition, the statute defining the underlying criminal offense in Boaz's case, "Theft of a motor vehicle or motorcycle," provided:

> Theft of a motor vehicle or motorcycle; penalty (A) It shall be unlawful for any person to take from another a motor vehicle or motorcycle with the intent to either temporarily[7] or permanently deprive such other person of such motor vehicle or motorcycle. (B) A person found guilty of intent to permanently deprive another of his motor vehicle or motorcycle is guilty of a felony.

Id. § 13-672(A)-(B) (1974) (repealed 1978). The § 924(e) analysis of a prior conspiracy conviction is governed by the substantive offense that was the object of the conspiracy, such that we must focus our § 924(e) analysis upon Ariz. Rev. Stat. § 13-672. See, e.g., United States v. Griffith, 301 F.3d 880, 885 (8th Cir. 2002) (analyzing the underlying crime of theft in relation to a conviction for conspiracy to commit theft).

This particular prior conviction could qualify as a predicate violent felony only if it satisfies what we have referred to as the "otherwise clause" of § 924(e)(2)(B)(ii). See Williams, 537 F.3d at 972. "In determining whether this crime is a violent felony, we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." Begay v. United States, 128 S. Ct. 1581, 1584 (2008). When the law defines an offense by proscribing several discrete, alternative sets of elements that might be shown as different manners of committing the offense, we employ the modified categorical approach that permits examination of a limited class of materials to determine which set of elements the defendant was found to have

---

[7]Convictions involving intent to temporarily deprive another of a vehicle are misdemeanors and are not at issue in the present case. Ariz. Rev. Stat. Ann. § 13-672(C).

violated. United States v. Livingston, 442 F.3d 1082, 1084 (8th Cir. 2006) ("[W]e look to the charging papers for the limited purpose of determining the specific elements for which [a defendant] was convicted."). Neither we nor the Supreme Court have approved a methodology that would decouple the limited review of record materials from an element-by-element analysis of the predicate offense. In other words, "[i]f the predicate statute reaches a broad range of conduct, this court may expand the inquiry to review the charging papers and jury instructions, but *only* to determine which part of the statute the defendant violated." United States v. Howell, 531 F.3d 621, 622–23 (8th Cir. 2008). When a statute is broadly inclusive, but contains no alternatives in its elements, we must apply the traditional categorical approach, and application of the modified categorical approach is inappropriate.

Like the Missouri auto-theft statute we addressed in Williams, 537 F.3d at 973, the Arizona auto-theft statute encompasses a broad range of conduct, some of which may be violent and similar in kind to the enumerated offenses in § 924(e)(2)(B)(ii), and some of which may not. The Arizona statute, however, contains no subdivisions or further delineations setting forth separate elements for proving different types of felony auto theft. In fact, unlike the Missouri statute in Williams, the Arizona statute is devoid of language suggesting different elements. Rather, it merely criminalizes "taking . . . another['s] . . . motor vehicle . . . with intent to deprive." Ariz. Rev. Stat. Ann. § 13-672. As such, this statute does not appear amenable to the modified categorical approach.

Applying the traditional categorical approach, we believe this statute is analogous to the offense in Williams that we described as "auto theft without consent," and which we determined is not a qualifying predicate felony. Williams, 537 F.3d at 973 (interpreting one of the offenses proscribed by Mo. Rev. Stat. § 570.030). Although the Arizona statute does not include lack of consent as an element, it would be nonsensical to interpret the Arizona statute as criminalizing the taking of another's motor vehicle where consent exists, and we may safely infer that

-11-

the rule of lenity makes lack of consent an implicit element of the Arizona offense. Based on <u>Williams</u>, then, Boaz's conviction for violating this Arizona statute does not qualify as a "violent felony."  18 U.S.C. § 924(e)(2)(B)(ii).

### c.  Exhibiting a Deadly Weapon Other than in Self Defense

Because we conclude the conviction for conspiracy to commit auto theft is not a predicate violent felony, it is necessary to address the 1974 Arizona conviction for exhibiting a deadly weapon other than in self-defense.  If the government had adequately proven that this conviction involved Boaz, it clearly would qualify as a violent felony.  The Arizona offense includes as an element the exhibition of a deadly weapon "in a threatening manner" or use of such a weapon "in a fight or quarrel." <u>See</u> Ariz. Rev. Stat. Ann. § 13-916 (1974) (repealed) ("A person who, not in necessary self-defense, in the presence of another, draws or exhibits any deadly weapon in a threatening manner, or who, in any manner, unlawfully uses the weapon in a fight or quarrel, is guilty of a crime punishable . . . by imprisonment in the state prison for not less than one year nor more than five years."); <u>see also</u> <u>United States v. Jackson</u>, 462 F.3d 899, 901 (8th Cir. 2006) (treating a conviction for unlawfully using a weapon by exhibiting it another's presence in an "angry or threatening manner" as a crime of violence); <u>United States v. Cox</u>, 130 F. App'x 843, 843–44 (8th Cir. 2005) (unpublished) (treating a conviction for unlawfully using a weapon by exhibiting it in another's presence in an angry or threatening manner as a violent felony).

As noted above, however, the only documents connecting Boaz to the 1974 Arizona conviction contained no identifying information other than a name.  Given the nature of the misunderstanding at sentencing, where the parties misinformed the court regarding the contents of the trial record, the district court has not had a proper opportunity to address the factual question of identity regarding this prior conviction. While we have not expressly held that a name alone may be deemed insufficient to prove a prior conviction at sentencing, our analyses have inferred as much, and we

have not approved such meager evidence as sufficient. In <u>United States v. Urbina-Mejia</u>, 450 F.3d 838, 839–40 (8th Cir. 2006), where a defendant alleged identical names were insufficient to support a finding of identity at sentencing, we elected not to rest our analysis solely on the presence of identical names. Rather, we noted the presence of identical names, noted that the record of the prior offense was obtained from a National Crime Information Center database, and noted testimony as to the reliability of that database, "which verifies records based on fingerprint analysis." <u>Id.</u> at 839–40. Accordingly, in <u>Urbina-Mejia</u>, we did not accept the defendant's characterization of the record as being devoid of evidence other than a name.

In the present case, the decision regarding the prior conviction rested not merely on a name, but on misinformation communicated to the court by counsel. As such, the court was denied a proper opportunity to address the question of identity. Accordingly, we remand for further proceedings regarding proof of the 1974 conviction. On remand, we see no barrier to the government presenting additional evidence to support its case.

## III. Conclusion

We have considered all of Boaz's arguments, including those not addressed herein, and we affirm the judgment of conviction. We vacate the sentence, however, and remand for further proceedings.

_____