**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee*,

　　　　　v.

TAVARES CHANDLER,
　　　　　*Defendant-Appellant*.

No. 12-10331

D.C. No.
2:10-cr-00482-
GMN-PAL-1

OPINION

Appeal from the United States District Court
for the District of Nevada
Gloria M. Navarro, District Judge, Presiding

Argued and Submitted
June 13, 2013—San Francisco, California

Filed February 20, 2014

Before: A. Wallace Tashima and Jay S. Bybee, Circuit
Judges, and Kimba M. Wood, Senior District Judge.[*]

Per Curiam Opinion;
Concurrence by Judge Bybee

---

[*] The Honorable Kimba M. Wood, Senior District Judge for the U.S. District Court for the Southern District of New York, sitting by designation.

**SUMMARY**[**]

### Criminal Law

The panel affirmed the district court's conclusion that the defendant had previously been convicted of three "violent felonies," which subjected him to an increased penalty under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1).

The panel held that a Nevada conviction for robbery is a violent felony because it creates a serious risk of harm that is comparable to the risk posed by burglary; and that because after *United States v. Mendez*, 992 F.2d 1488 (9th Cir. 1992), "the § 924(e) analysis of a prior conspiracy conviction is governed by the substantive offense that was the object of the conspiracy," conspiracy to commit robbery, pursuant to Nev. Rev. Stat. §§ 199.480, 200.380, is also a "violent felony" under the ACCA's residual clause.

The panel also held that second degree kidnapping in Nevada, Nev. Rev. Stat. §§ 200.310, 200.330, categorically involves a serious risk that physical force may be used in the course of committing the offense; that this risk is roughly similar to the risk involved in burglary; and that second degree kidnapping under Nevada law is, accordingly, categorically a "violent felony" under the residual clause of the ACCA.

Concurring, Judge Bybee, joined by Judges Tashima and District Judge Wood, agreed that *Mendez* requires the per

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

curiam holding that conspiracy to commit robbery is a "violent felony" under 18 U.S.C. § 924(e)(2)(B)(ii), but wrote separately to question the reasoning and continued validity of *Mendez*.

## COUNSEL

James A. Oronoz (argued) and Lucas J. Gaffney, Oronoz & Ericsson, L.L.C., Las Vegas, Nevada, for Defendant-Appellant.

Phillip N. Smith, Jr. (argued), Assistant United States Attorney, Daniel G. Bogden, United States Attorney, Robert L. Ellman, Appellate Chief, United States Attorney's Office for the District of Nevada, Las Vegas, Nevada, for Plaintiff-Appellee.

## OPINION

PER CURIAM:

Tavares Chandler pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At sentencing, the district court concluded that Chandler had been convicted of three "violent felonies," as defined by the Armed Career Criminal Act (ACCA), and sentenced Chandler to a term of 235 months' imprisonment. Chandler does not contest his extensive criminal history, but he contends that the district court erred in concluding that he had been convicted of three violent felonies. Because we conclude that all three prior convictions are violent felonies under the ACCA, we affirm.

## I.    FACTS AND PROCEDURAL HISTORY

Chandler was indicted in 2010 for being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1). Chandler pleaded guilty to the indictment without the benefit of a plea agreement.  Chandler had previously been convicted in Nevada state court of the offenses of (1) second degree kidnapping, Nev. Rev. Stat. §§ 200.310, 200.330; (2) coercion, Nev. Rev. Stat. § 207.190; and (3) conspiracy to commit robbery, Nev. Rev. Stat. §§ 199.480, 200.380.  The government sought an increased penalty under the ACCA, arguing that Chandler's Nevada state convictions qualified as violent felonies.  *See* 18 U.S.C. § 924(e)(1).  Chandler objected, arguing that neither his conspiracy conviction nor his kidnapping conviction was a violent felony as defined by the ACCA.  He did not dispute that his conviction for coercion qualified as a violent felony.  Over Chandler's objection, the district court determined that Chandler's three Nevada state convictions were all violent felonies under the ACCA and sentenced Chandler to 235-months' imprisonment.  Chandler timely appealed.

"We review de novo whether a prior conviction is a predicate felony under the ACCA."  *United States v. Grisel*, 488 F.3d 844, 846 (9th Cir. 2007) (en banc).

## II.    DISCUSSION

Under 18 U.S.C. § 924(e)(1), any "person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony or a serious drug offense, or both, . . . shall be . . . imprisoned not less than fifteen years."  For purposes of this subsection of the ACCA, a violent felony is "any crime punishable by imprisonment for a term exceeding

one year . . . [that] is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(B)(ii).

Notably, a violent felony as defined in the ACCA is nearly identical to a "crime of violence" as defined in the Sentencing Guidelines' Career Offender enhancement.[1] *Compare* 18 U.S.C. § 924(e)(B)(ii) *with* U.S. Sentencing Guidelines Manual § 4B1.2(a) (providing that a crime of violence is (1) "any offense . . . punishable by imprisonment for a term exceeding one year, that . . . is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another"). Because there is no meaningful distinction between the definitions, we have used our analysis of the definition of crime of violence in the Sentencing Guidelines to guide our interpretation of violent felony in the ACCA. *See United States v. Spencer*, 724 F.3d 1133, 1138 (9th Cir. 2013); *United States v. Crews*, 621 F.3d 849, 852 n.4 (9th Cir. 2010); *United States v. Melton*, 344 F.3d 1021, 1027 (9th Cir. 2003).

In *United States v. Park*, 649 F.3d 1175 (9th Cir. 2011), we established a framework for analyzing whether a conviction under state law is a conviction for a crime of violence. "First, the 'conduct encompassed by the elements

---

[1] Similarly, we have observed that the definition of "crime of violence" in 18 U.S.C. § 924(c) "is very similar to that of 'violent felony' in section 924(e)(2)(B)." *United States v. Sherbondy*, 865 F.2d 996, 1008 n.15 (9th Cir. 1988). Although the definitions are not always interchangeable, similar statutory language suggests that the definitions may be similarly interpreted. *United States v. Coronado*, 603 F.3d 706, 709 (9th Cir. 2010).

of the offense, in the ordinary case,' must 'present[ ] a serious potential risk of physical injury to another.'" *Id.* at 1177–78 (alteration in original) (quoting *James v. United States*, 550 U.S. 192, 208 (2007)). "Second, the state offense must be 'roughly similar, in kind as well as in degree of risk posed' to those offenses enumerated at the beginning of the residual clause—burglary of a dwelling, arson, extortion, and crimes involving explosives." *Id.* at 1178 (quoting *Begay v. United States*, 553 U.S. 137, 143 (2008)). As we recently observed:

> The inquiry under *Park*'s first prong is straightforward. But the second requirement— whether the state offense is "'roughly similar, in kind as well as in degree of risk posed' to those offenses enumerated at the beginning of the residual clause"—is more complicated, and must be addressed in light of the Supreme Court's quartet of ACCA cases.

*Spencer*, 724 F.3d at 1138 (internal citation omitted) (quoting *Park*, 649 F.3d at 1178).

In *James*, the Supreme Court held that the second requirement should focus on whether the risk posed by the state offense "is comparable to that posed by its closest analog among the enumerated offenses." *James*, 550 U.S. at 203. In *Begay*, however, the Court concluded that a state conviction for driving under the influence was not categorically a violent felony under the ACCA because it did not "involve purposeful, violent, and aggressive conduct." *Begay*, 553 U.S. at 144–45 (internal quotation marks omitted); s*ee also Chambers v. United States*, 555 U.S. 122, 128 (2009) (applying *Begay*'s "purposeful, violent, and aggressive conduct" formula). In its most recent ACCA

opinion, the Court once again focused on the level of risk posed by the state offense at issue compared with the level of risk posed by the enumerated offenses. *See Sykes v. United States*, 131 S. Ct. 2267, 2275 (2011) ("In general, levels of risk divide crimes that qualify from those that do not.").

We concluded in *Spencer* that *Sykes* meant that *Begay*'s "'purposeful, violent, and aggressive formulation' is only dispositive in cases involving a strict liability, negligence, or recklessness offense"—such as driving under the influence—and does not apply to intentional crimes. *Spencer*, 724 F.3d at 1139; *see also Sykes*, 131 S. Ct. at 2276 ("*Begay* involved a crime akin to strict liability, negligence, and recklessness crimes; and the purposeful, violent, and aggressive formulation was used in that case to explain the result. The felony at issue here is not a strict liability, negligence, or recklessness crime."). Many of our sister circuits have interpreted *Sykes* similarly. *See, e.g.*, *Harrington v. United States*, 689 F.3d 124, 135 (2d Cir. 2012) ("In *Sykes*, the Court clarified that in cases involving intentional criminal conduct, the focus of judicial inquiry should remain on the risk assessment specified in the ACCA's text, i.e., whether the proscribed conduct presents 'a serious potential risk of physical injury to another' comparable to that posed by the enumerated offenses." (quoting 18 U.S.C. § 924(e)(2)(B)(ii))); *United States v. Chitwood*, 676 F.3d 971, 979 (11th Cir. 2012) ("*Sykes* makes clear that *Begay*'s 'purposeful, violent, and aggressive' analysis does not apply to offenses that are not strict liability, negligence, or recklessness crimes."); *United States v. Bartel*, 698 F.3d 658, 662 (8th Cir. 2012); *United States v. Meeks*, 664 F.3d 1067, 1070 (6th Cir. 2012); *United States v. Smith*, 652 F.3d 1244, 1248 (10th Cir. 2011); *United States v. Rodriguez*, 659 F.3d 117, 119 (1st Cir. 2011).

Here, neither conspiracy to commit robbery nor second degree kidnapping is a strict liability crime or offense that punishes reckless or negligent behavior. *See Doyle v. State*, 921 P.2d 901, 911 (Nev. 1996) (overruled on other grounds by *Kaczmarek v. State*, 91 P.3d 16 (Nev. 2004)) ("A person who *knowingly* does any act to further the object of a conspiracy, or otherwise participates therein, is criminally liable as a conspirator; however, '[m]ere knowledge or approval of, or acquiescence in, the object and purpose of a conspiracy without an agreement to cooperate in achieving such object or purpose does not make one a party to conspiracy.'" (alteration in original) (emphasis added) (quoting *State v. Arredondo*, 746 P.2d 484, 487 (Ariz. 1987))); Nev. Rev. Stat. § 200.310(2) ("A person who *willfully* and without authority of law seizes, inveigles, takes, carries away, or kidnaps another person with the intent to keep the person secretly imprisoned . . . is guilty of kidnapping in the second degree." (emphasis added)). As a result, we apply the "closest analog test" set forth in *James*. *See Spencer*, 724 F.3d at 1140.

With this framework in mind, we turn to Chandler's prior convictions.

A. *Conspiracy to Commit Robbery*

We have not previously considered whether conspiracy to commit robbery is a violent felony.[2]  We have, however,

---

[2] We recently held that a Nevada conviction for conspiracy to commit burglary is not an aggravated felony under the immigration and Nationality Act (INA), 8 U.S.C. § 1101(a)(43)(U). *United States v. Garcia-Santana*, ___ F.3d ___, No. 12-10471 (9th Cir. Feb. 20, 2014). *Garcia-Santana* does not govern this case because the INA's aggravated

determined that conspiracy to interfere with interstate commerce by robbery is a crime of violence for purposes of the firearm sentencing enhancement in 18 U.S.C. § 924(c)(1).[3] *See United States v. Mendez*, 992 F.2d 1488, 1489 (9th Cir. 1993). In *Mendez*, we explained that a conspiracy "'increases the chances that the planned crime will be committed'" because a conspiracy "'provides a focal point for collective criminal action.'" *Id.* at 1491 (quoting *United States v. Chimurenga*, 760 F.2d 400, 404 (2d Cir. 1985)). Due to this heightened risk of harm, a "conspiracy to commit a crime of violence is a 'crime of violence' under the substantial risk definition of § 924(c)(3)(B) or its equivalent."[4] *Id.* at 1492. In other words, "conspiracy to rob

---

felony definition substantially differs from the ACCA's definition of a "violent felony." *See Nijhawan v. Holder*, 129 S. Ct. 2294, 2300–01 (2009). Unlike the ACCA, the INA defines "aggravated felony" to specifically include a "conspiracy to commit" one of its listed offenses, among which is "burglary." 8 U.S.C. § 1101(a)(43)(U). In *Garcia-Santana*, therefore, the question presented was whether "conspiracy"—as used in the INA—requires proof of an overt act; we held that it does. *See Garcia-Santana*, slip op. at 3. Here, by contrast, we must decide whether a Nevada conviction for conspiracy to commit robbery, even though it does not require an overt act, nonetheless "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(B)(ii).

[3] The firearm sentencing enhancement provision provides that "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence . . .be sentenced to a term of imprisonment of not less than 5 years." 18 U.S.C. § 924(c)(1).

[4] The provision referenced in *Mendez*—18 U.S.C. § 924(c)(3)(B)— defines crime of violence for the purposes of the firearm sentencing enhancement provision that was at issue in that case. It states that "the term 'crime of violence' means an offense that is a felony and . . . by its

in violation of [the Hobbs Act] 'by its nature, involves a substantial risk that physical force . . . may be used in the course of committing the offense,'" and is thus a crime of violence. *Mendez*, 992 F.2d at 1491 (quoting 18 U.S.C. § 924(c)(3)(B)). Cognizant of this binding precedent,[5] we consider whether conspiracy to commit robbery under Nevada law is a "violent felony" as that term is defined in § 924(e)(2)(B)(ii).

### 1. Serious potential risk of injury

The first question under *Park* is whether the conduct encompassed by the elements of conspiracy to commit robbery under Nevada law ordinarily "present[] a serious potential risk of physical injury to another." *Park*, 649 F.3d at 1177–78 (quoting *James*, 550 U.S. at 208) (brackets in the original). Because *Mendez* established that conspiracy to commit robbery "categorically creates a substantial risk that physical force may be used," *Mendez*, 992 F.2d at 1492, we must answer in the affirmative.

---

nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B).

[5] As Judge Bybee points out, the circuits are split over whether *conspiracy* to commit a violent felony is itself a violent felony. *See* Concurrence at 28–29 (Bybee, J., concurring). Given that split, we recognize that *Mendez* may not survive the Supreme Court's quartet of ACCA cases. But, at the least, *Mendez* is not "clearly irreconcilable" with the Supreme Court's precedent, so we are bound to apply *Mendez* until it is expressly overruled by an en banc panel of this court. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

Admittedly, *Mendez* differs from this case in two respects. First, *Mendez* involved conspiracy to commit robbery in violation of the Hobbs Act, 18 U.S.C. § 1951, whereas here, Chandler was convicted of conspiracy to commit robbery in violation of Nev. Rev. Stat. §§ 199.480, 200.380. The Hobbs Act penalizes "[w]hoever in any way or degree obstructs, delays or affects commerce . . . by robbery . . . or conspires so to do." 18 U.S.C. § 1951(a). The Act then defines robbery as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence." 18 U.S.C. § 1951(b)(1). And conspiracy under federal law occurs "[i]f two or more persons conspire [ ] to commit any offense against the United States." 18 U.S.C. § 371; *see also United States v. Feola*, 420 U.S. 671, 692 (1975) ("[T]he essence of conspiracy is agreement.").

Nevada also defines conspiracy as "an agreement between two or more persons for an unlawful purpose." *Nunnery v. Eighth Judicial Dist. Court ex rel. Cnty. of Clark*, 186 P.3d 886, 888 (Nev. 2008) (per curiam) (internal quotation marks omitted); *see also* Nev. Rev. Stat. § 199.480(1). And, under Nevada law, robbery is "the unlawful taking of personal property from the person of another, or in the person's presence, against his or her will, by means of force or violence or fear of injury." Nev. Rev. Stat. § 200.380(1).

Thus, federal law and Nevada law both effectively define conspiracy to commit robbery as an agreement between two or more persons to unlawfully take property from another person against his or her will. Because federal law is substantially similar to Nevada law, the first distinction between *Mendez* and this case is insignificant.

Second, *Mendez* differs from this case because it involved 18 U.S.C. § 924(c)(1), which subjects individuals who use a firearm in the course of a "crime of violence" to an additional five years' imprisonment. The statute defines a crime of violence as any offense "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B). By contrast, Chandler appeals a sentencing enhancement under 18 U.S.C. § 924(e)(2)(B)(ii), which subjects individuals who have three previous convictions for "violent felonies" to a minimum of fifteen-years imprisonment. A violent felony is an offense that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.*

Both statutes are similar because they apply to crimes that involve a serious or substantial risk that physical force will occur during the course of the offense. The major difference between these two statutes is that the ACCA only applies to seriously dangerous crimes that are similar to the enumerated offenses, whereas 18 U.S.C. § 924(c)(1) applies to all substantially dangerous offenses. In light of this difference, *Mendez* is not helpful when analyzing the second prong of the *Park* framework. Nevertheless, because *Mendez* uses the substantial risk of injury test, which is similar to the serious risk of injury test that we consider here, it still applies to our analysis of the first prong.[6]

---

[6] Indeed, "substantial" is defined as important, essential, "not seeming or imaginary." *Webster's Third New International Dictionary of the English Language Unabridged* (2002). Similarly, "serious" is defined as "[g]rave in disposition, appearance, or manner: not light." *Id.*

Accordingly, despite the differences between *Mendez* and this case, we are bound by *Mendez* to conclude that "conspiracy to rob . . . 'by its nature, involves a substantial risk that physical force . . . may be used in the course of committing the offense.'" *Mendez*, 992 F.2d at 1491 (quoting 18 U.S.C. § 924(c)(3)(B)); *see also United States v. Gore*, 636 F.3d 728, 738 (5th Cir. 2011) ("An agreement to commit aggravated robbery presents a serious potential risk of injury."); *United States v. Turner*, 501 F.3d 59, 67 (1st Cir. 2007).

   2.  Risk of injury roughly similar to the enumerated
       offenses in the ACCA

Because we previously determined that robbery in Nevada involves a serious risk of physical force, we must now answer the more difficult question: whether conspiracy to commit robbery in Nevada is "'roughly similar, in kind as well as in degree of risk posed' to those offenses enumerated at the beginning of the residual clause." *Spencer*, 724 F.3d at 1140 (quoting *Park*, 649 F.3d at 1178). Under *Mendez*, a conspiracy to commit a violent crime creates the same risk of harm as the violent crime itself. 992 F.2d at 1492. So, if robbery in Nevada is "roughly similar, in kind as well as in degree of risk posed" to burglary, arson, or extortion, 18 U.S.C. § 924(e)(2)(B)(ii), then conspiracy to commit robbery is also comparable to the enumerated offenses. Here, robbery as defined by Nevada is most similar to extortion and burglary.

The Supreme Court has defined extortion as "obtaining something of value from another with his consent[7] induced by the wrongful use of force, fear, or threats." *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409 (2003) (internal quotation marks omitted). We previously determined that a Nevada state conviction for robbery is a crime of violence under the U.S. Sentencing Guidelines because "Nev. Rev. Stat. § 200.380 . . . satisf[ies] the generic definition of extortion." *See United States v. Harris*, 572 F.3d 1065, 1065–66 (9th Cir. 2009) (per curiam).

Burglary is "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 598 (1990). The real danger of burglary, like robbery, is "the possibility of a face-to-face confrontation" with the victim or an intervener. *James*, 550 U.S. at 203. Indeed, robbery, like burglary, "is dangerous because it can end in confrontation leading to violence." *Sykes*, 131 S. Ct. at 2273. In fact, the risk posed by robbery may actually be greater than the risk posed by burglary because robbery requires a taking from a person, against his or her will, by means of force or violence or fear of injury, whereas burglary may be completed without any human interaction. *See United States v. Davis*, 487 F.3d 282, 286 (5th Cir. 2007) ("To commit robbery, an individual must interact with the victim in order to cause bodily injury or place the victim in fear of it.").

---

[7] Nevada's definition of robbery differs from extortion because the taking of property there must be "against the will" of the victim. But as Professor LaFave has explained, this difference is not significant because "both crimes equally require that the defendant's threats induce the victim to give up his property, something which he would not otherwise have done." 3 W. LaFave, *Substantive Criminal Law* § 20.4(b) (2d ed. 2003).

Accordingly, we conclude that robbery poses risks similar to extortion and burglary. As such, conspiracy to commit robbery in Nevada is also similar, in kind and degree of risk posed, to extortion and burglary. *See Gore*, 636 F.3d at 741 ("We are satisfied that conspiracy to commit aggravated robbery, in the ordinary case, presents a serious risk of injury similar in kind and degree to the enumerated offenses.").

### 3. Conclusion

A Nevada conviction for robbery is a violent felony because it creates a serious risk of harm that is comparable to the risk posed by burglary. And because after *Mendez*, "the § 924(e) analysis of a prior conspiracy conviction is governed by the substantive offense that was the object of the conspiracy," *United States v. Boaz*, 558 F.3d 800 (8th Cir. 2009), conspiracy to commit robbery, pursuant to Nev. Rev. Stat. §§ 199.480, 200.380, is also a "violent felony" under the ACCA's residual clause. *See also United States v. White*, 571 F.3d 365, 370, 372 (4th Cir. 2009) ("[T]he essential conduct underlying the Conspiracy Offense is categorically violent . . . [and] [t]he Conspiracy Offense cannot be divorced from its violent objective—robbery with a deadly weapon.").

## B. *Second degree kidnapping*

Under Nevada law:

> A person who willfully and without authority of law seizes, inveigles, takes, carries away or kidnaps another person with the intent to keep the person secretly imprisoned within the State, or for the purpose of conveying the person out of the State without authority of

law, or in any manner held to service or detained against the person's will, is guilty of kidnapping in the second degree.

Nev. Rev. Stat. § 200.310(2).

We have not previously had the opportunity to consider whether second degree kidnapping under Nevada law is a violent felony. But, in *United States v. Williams*, 110 F.3d 50 (9th Cir. 1997), we determined that second degree kidnapping under Oregon law, Ore. Rev. Stat. § 163.225(1)(a), is a crime of violence as the term is defined in § 4B1.2(a)(2) of the Sentencing Guidelines. *Id.* at 51–53. And in *United States v. Sherbondy*, 865 F.2d 996 (9th Cir. 1988), we observed that kidnapping as defined by the Model Penal Code "entails a 'serious potential risk of physical injury' to the victim, making the offense a 'violent felony' under subsection (ii)." *Id.* at 1009 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)). Although neither of these cases involved statutes exactly like Nevada's, we keep these persuasive authorities in mind as we review Chandler's second degree kidnapping conviction. Once again, we apply the framework that we established in *Park*, 649 F.3d 1175.

1.  Serious risk of harm

Chandler argues that second degree kidnapping as defined by Nevada law can occur in ways that are both violent and nonviolent, particularly because "inveigling" does not require force or restraint. *See Bridges v. State*, 6 P.3d 1000, 1009 (Nev. 2000); *Black's Law Dictionary* 843 (8th Ed. 2004) (inveigle means "to lure or entice through deceit or insincerity"). Accordingly, he contends that we must use the

modified categorical approach to determine whether his conviction involved violent conduct.  We disagree.

We have determined that kidnapping presents a risk of serious force, even where the kidnapping statute at issue has no force requirement.  *See Delgado-Hernandez v. Holder*, 697 F.3d 1125, 1133 (9th Cir. 2012) (considering whether attempted kidnapping is an aggravated felony).  In *Delgado-Hernandez*, we referenced the federal kidnapping statute, 18 U.S.C. § 1201(a), which punishes anyone who "'unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person.'"  *Id.* at 1130 (quoting 18 U.S.C. § 1201(a)).  We adopted the Sixth Circuit's reasoning in explaining that:

> [T]he essence of kidnapping is requiring another to do something against his or her will; and because physical force or restraint is usually the best way to overbear the will of another, physical force or threat of force is a latent, but more often actual, companion of the coercive element.  That deception may be used to effect the kidnapping does not erase the ever-present possibility that the victim may figure out what's really going on and decide to resist, in turn requiring the perpetrator to resort to actual physical restraint if he is to carry out the criminal plan.

*Id.* at 1130–31 (quoting *United States v. Kaplansky*, 42 F.3d 320, 324 (6th Cir. 1994)).  Additionally, we observed in *Delgado-Hernandez* that "the Supreme Court has seen fit to assume, admittedly without deciding, that [kidnapping]

constitutes a crime that presents a substantial risk of force." *Delgado-Hernandez*, 697 F.3d at 1130 (citing *United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999)). And while the Supreme Court's statement in this regard was dictum, it is nevertheless highly persuasive. *See United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000) ("Supreme Court dicta have a weight that is greater than ordinary judicial dicta as prophecy of what the Court might hold; accordingly, we do not blandly shrug them off because they were not a holding.").[8]

Of particular importance here, Nevada's second degree kidnapping statute is very similar to the federal kidnapping statute that we reviewed in *Delgado-Hernandez*. *Compare* Nev. Rev. Stat. § 200.310(2) (a person is guilty of kidnapping if he unlawfully "seizes, inveigles, takes, carries away, or kidnaps" another person), *with* 18 U.S.C. § 1201(a) (a person commits kidnapping if he unlawfully "seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away" another person). Kidnapping could potentially be committed in both jurisdictions without the use of force. Because of the similarities between the Nevada second degree kidnapping statute and the federal kidnapping statute, our reasoning in *Delgado-Hernandez* is highly persuasive here.

---

[8] In *Delgado-Hernandez* we also noted that "legislative bodies, including Congress, have consistently treated kidnapping as a crime of violence." *Delgado-Hernandez*, 697 F.3d at 1131–33. After surveying the evidence, we concluded: "In sum, numerous courts have held that kidnapping generally presents a risk of substantial force. Congress, the Sentencing Commission, and forty jurisdictions have concluded, consistent with historical practice, that kidnapping is a violent crime." *Id.* at 1133.

Thus, even though force is not required, second degree kidnapping as defined by Nevada law still presents a serious potential risk of physical injury to another.[9] *See also United States v. Sherbondy*, 865 F.2d at 1009 ("kidnapping entails a 'serious potential risk of physical injury' to the victim"); *Kaplansky*, 42 F.3d at 324 ("kidnapping is the 'type' of offense where the risk of physical injury to the victim is invariably present").

2. Risk of injury roughly similar to the enumerated offenses in the ACCA

The only question remaining, then, is whether second degree kidnapping under Nevada law is a crime that is "roughly similar, in kind as well as in degree of risk posed" to burglary, arson, extortion, or crimes involving the use of explosives. *Begay*, 553 U.S. at 143. Like conspiracy to commit robbery, second degree kidnapping is similar to the enumerated crime of burglary.

As we discussed above, "[b]urglary is dangerous because it can end in confrontation leading to violence." *Sykes*, 131 S. Ct. at 2273. By comparison, kidnapping is riskier than burglary because "a face-to-face confrontation," *James*, 550 U.S. at 203, with the victim is very likely when a kidnapping occurs. Accordingly, the second prong of the

---

[9] If anything, it would seem that Nevada second degree kidnapping categorically presents a greater risk of force than the federal kidnapping statute. *Compare* Nev. Rev. Stat.§ 200.310(2) (requiring that the action be done "with the intent to keep the person secretly imprisoned within the State," "for the purpose of conveying the person out of the State without authority of law," or " in any manner held to service or detained against the person's will"), *with* 18 U.S.C. § 1201(a) (lacking the heightened *mens rea* requirements of the Nevada statute).

*Park* framework is satisfied. *See, e.g.*, *Delgado-Hernandez*, 697 F.3d at 1128–30 (describing the substantial risks kidnapping poses); *Sherbondy*, 865 F.2d at 1009 (reasoning that kidnapping, as defined in the Model Penal Code, is a violent felony).

### 3. Conclusion

We conclude that second degree kidnapping in Nevada categorically involves a serious risk that physical force may be used in the course of committing the offense and that this risk is roughly similar to the risk involved in burglary. Accordingly, we hold that second degree kidnapping under Nevada law is categorically a "violent felony" under the residual clause of the ACCA.

### III.   CONCLUSION

For the foregoing reasons, conspiracy to commit robbery and second degree kidnapping are "violent felonies" under 18 U.S.C. § 924(e)(2)(B)(ii). Accordingly, Chandler is subject to the fifteen-year sentencing enhancement under § 924(e)(1) for having previously been convicted of three violent felonies.

The judgment of the district court is **AFFIRMED**.

---

BYBEE, Circuit Judge, with whom TASHIMA, Circuit Judge, and WOOD, Senior District Judge, join, concurring:

I agree that *United States v. Mendez*, 992 F.2d 1488 (9th Cir. 1993), requires our per curiam holding that conspiracy to

commit robbery is a "violent felony" under 18 U.S.C. § 924(e)(2)(B)(ii). I write separately to question the reasoning and continued validity of *Mendez.*

I

Not all felonies are "violent felonies." As indicated by its title, the Armed Career Criminal Act's ("ACCA") fifteen-year mandatory prison term is intended for career criminals, those offenders whose prior crimes "reveal a degree of callousness toward risk" and "show an increased likelihood that the offender is the kind of person who might deliberately point [a] gun and pull the trigger." *Begay v. United States*, 553 U.S. 137, 146 (2008); *see also Sykes v. United States*, 131 S. Ct. 2267, 2275 (2011). By contrast, the ACCA's fifteen-year mandatory minimum sentence was not intended for "reckless polluters" or those who "recklessly tamper with consumer products." *Begay*, 553 U.S. at 146–47.

When determining whether a felony is a "violent felony" courts must "employ the 'categorical approach'" to determine whether an offense "'involves conduct that presents a serious potential risk of physical injury to another.'" *James v. United States*, 550 U.S. 192, 201–02 (2007) (quoting 18 U.S.C. § 924(e)(2)(B)(ii)). Under the categorical approach, the relevant inquiry is whether the statutory elements of the offense "are of the type that would justify its inclusion within the residual provision." *Id.* at 202.

*Mendez* does not satisfy this standard for two reasons. First, *Mendez* treats the elements of conspiracy to commit a crime as identical to the elements of the underlying crime. Second, proceeding from that faulty premise, *Mendez* holds that conspiracy to commit robbery is a crime of violence even

though conspiracy rarely, if ever, presents a serious potential risk of injury to another.

## II

In *Mendez*, we used the categorical approach—as we understood it in 1993—to determine "whether conspiracy to rob is . . . by definition [ ] a 'crime of violence'" under 18 U.S.C. § 924(c)(1).  992 F.2d at 1490–91.  This was a good start, but we then broadly declared, intuitively, but without any analysis of the elements of robbery as defined in the Hobbs Act, that "[r]obbery indisputably qualifies as a crime of violence." *Id.* at 1491.  Then, without any analysis of the elements of conspiracy, we decided that conspiracy to commit robbery presents the same serious potential risk of physical injury as completed robbery because the existence of a criminal conspiracy increases the chances the planned crime will be committed. *Id.* at 1492.

In addition to being illogical, *Mendez*'s conclusion is questionable in light of recent Supreme Court precedent.  In *James*, the Court considered whether attempted burglary was a violent felony under the ACCA's residual clause, even though burglary is one of the violent felonies enumerated in the ACCA's residual clause.  550 U.S. at 195.  A prolonged analysis would have been wholly unnecessary if the inchoate offense, attempted burglary, was the same as the actual felony, burglary.  But, as the Court determined, inchoate offenses may pose different risks than the underlying offense. *Id.* at 204.  For example, "the risk posed by an attempted burglary . . . may be even greater than that posed by a typical completed burglary" because attempted burglaries are often thwarted by an intervenor. *Id*.  Thus, *James* demonstrates that *every* inchoate offense must be considered individually,

regardless of whether the underlying offense is categorically a violent felony, because different offenses pose different risks.

*James* is consistent with the well-established rule that inchoate offenses are separate from completed offenses. *Iannelli v. United States*, 420 U.S. 770, 778 (1975) ("This Court repeatedly has recognized that a conspiracy poses distinct dangers quite apart from those of the substantive offense."); *Braverman v. United States*, 317 U.S. 49, 54 (1942) ("A conspiracy is not the commission of the crime which it contemplates, and neither violates nor 'arises under' the statute whose violation is its object."); *see also United States v. Iribe*, 564 F.3d 1155, 1160 (9th Cir. 2009) (quoting *United States v. Macias-Valencia*, 510 F.3d 1012, 1014 (9th Cir. 2007) ("'Conspiracy and attempt are inchoate crimes that do not require completion of the criminal objective.'")).

This case presents a prime example of the significant differences between an inchoate offense (conspiracy to commit robbery) and a completed offense (robbery). In Nevada, robbery is defined as:

> the unlawful taking of personal property from the person of another, or in the person's presence, against his or her will, by means of force or violence or fear of injury, immediate or future, to his or her person or property, or the person or property of a member of his or her family, or of anyone in his or her company at the time of the robbery.

Nev. Rev. Stat. § 200.380(1). "More briefly stated, robbery has as its elements the taking of the property of another from

his person or presence through the application of force or fear." *State v. Feinzilber*, 350 P.2d 399, 401 (Nev. 1960) (discussing Nev. Rev. Stat. § 200.380(1)).

By comparison, Nevada's conspiracy statute, Nev. Rev. Stat.§ 199.480, simply states that conspiracy occurs "whenever two or more persons conspire to commit murder, robbery, sexual assault, [or other enumerated offenses]." Unlike some states, Nevada does not require an overt act in pursuance of the crime, Nev. Rev. Stat. § 199.490, so "[t]he gist of the crime of conspiracy is the unlawful agreement or confederation." *Lane v. Torvinen*, 624 P.2d 1385, 1386 (Nev. 1981).

The Supreme Court of Nevada addressed the difference between conspiracy to commit robbery and robbery in *Nunnery v. Eighth Judicial Dist. Court ex rel. County of Clark*, 186 P.3d 886 (Nev. 2008) (per curiam), in order to decide whether "conspiracy to commit robbery is [ ] a felony involving the use or threat of violence." *Id.* at 887. The court began by analyzing an earlier case where it decided that solicitation to commit murder is not a violent crime because "in the crime of solicitation, the harm is the asking—nothing more need be proven." *Hidalgo v. Eighth Judicial Dist. Court*, 184 P.3d 369, 373 (Nev. 2008) (en banc) (per curiam) (citations and internal quotation marks omitted).[1] The

---

[1] *Hidalgo* also included observations that are equally applicable to conspiracy. For example, conspiracy, much like "[s]olicitation is criminalized . . . because it carries the risk or possibility that it could lead to a consummated crime," but under Nevada law "a risk or potential of harm to others 'does not constitute a "threat."'" *Id.* (quoting *Redeker v. Eighth Judicial Dist. Court ex rel. County of Clark*, 127 P.3d 520, 527 (Nev. 2006)). "Obviously, the nature of the crime Hidalgo allegedly

Supreme Court of Nevada then explained that *Hidalgo* "applie[d] with equal force here" because "conspiracy is committed upon reaching the unlawful agreement." *Nunnery*, 186 P.3d at 888.  And because conspiracy does not require an overt act—let alone a violent one—the Supreme Court of Nevada concluded, "although conspiracy to commit robbery involves conspiring to commit a violent act, it is not itself a felony involving the use or threat of violence." *Id.* at 889.

I see no reason why this court should diverge from the Supreme Court of Nevada's sound reasoning and the well-established law that conspiracy to commit a crime is not the same as committing a crime.  But until we are willing to re-evaluate *Mendez*, offenders like Chandler will be categorized as "career offenders" based on robberies which they discussed but did not actually commit.

III

Furthermore, because of its illogical holding that *conspiracy to do x = x*, *Mendez* did not evaluate whether the elements of conspiracy to commit robbery  "involve[ ] conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B)(ii).  I submit that this omission significantly undermines *Mendez*'s continued validity because conspiracy to commit robbery does not "show an increased likelihood that the offender is the kind of person who might deliberately point [a] gun and pull the trigger." *Begay*, 553 U.S. at 146.

---

solicited is itself violent.  But this does not transform *soliciting* murder into *threatening* murder."  *Id.* at 374.

There is little doubt that robbery poses a "serious potential risk of physical injury to another" at the time it is committed. *See United States v. Harris*, 572 F.3d 1065, 1066 (9th Cir. 2009) (per curiam) (determining that "a conviction under Nev. Rev. Stat. § 200.380 [for robbery] categorically qualifies as a crime of violence for purposes of the career offender sentencing enhancement" under the Sentencing Guidelines).

Conspiracy to commit robbery, however, poses a risk that a robbery will be committed only *in the future*. *See Chambers v. United States*, 555 U.S. 122, 128 (2009) (rejecting the government's argument that an offense is a violent felony because it posed a risk of violence in the future); *Lane*, 624 P.2d at 1386 ("The gist of the crime of conspiracy is the unlawful agreement or confederation."). And as the Supreme Court of Nevada has aptly explained, "a risk or potential of harm to others does not constitute a threat." *Hidalgo*, 184 P.3d at 373 (citations and internal quotation marks omitted); *see also Nunnery*, 186 P.3d at 888–89 (holding that conspiracy to commit robbery is not a violent crime because "the elements of conspiracy to commit robbery do not include the use or threat of violence to the person of another").

*Mendez* incidentally acknowledges the difference between imminent and future harm. 992 F.2d at 1491–92 ("[W]here conspirators agree to use 'actual or threatened force, or violence' to obtain personal property from another . . . *the risk* that physical force *may be used* . . . is substantial." (emphasis added) (citations and internal quotation marks omitted))). But *Mendez* does not recognize that although a person conspiring to commit robbery is "doing *something* at the relevant time, there is no reason to believe that the

*something* poses a serious potential risk of physical injury." *Chambers*, 555 U.S. at 128. "To the contrary, an individual who [conspires to commit robbery] would seem unlikely, not likely, to call attention to his whereabouts by simultaneously engaging in additional violent and unlawful conduct." *Id.* at 127; *see also Grunewald v. United States*, 353 U.S. 391, 402 (1957) ("For every conspiracy is by its very nature secret; a case can hardly be supposed where men concert together for crime and advertise their purpose to the world.").

It is only when overt acts directed toward the commission of the crime are committed that a crime begins to pose a "serious potential risk of physical injury to another." 18 U.S.C. § 924(3)(2)(B)(ii). But, in Nevada, once there has been an overt act, the offense is no longer a mere conspiracy.**[2]** *Nunnery*, 186 P.3d at 888–89. Instead, the offense becomes either attempted or completed robbery—offenses which ordinarily pose a more serious potential risk of harm to others.

In other words, conspiracy is at least one "step away from any physical dimension." *United States v. Raupp*, 677 F.3d 756, 763 (7th Cir. 2012) (Wood, J., dissenting). And because the "step" between discussing or even agreeing on possibilities and physical action is a significant one, I maintain that conspiracy to commit robbery is simply not an offense "of the type that would justify its inclusion within the

---

**[2]** The Supreme Court of Nevada aptly explained this difference: "Between preparation for the attempt and the attempt itself, there is a wide difference. The preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the direct movement toward the commission after the preparations are made." *State v. Verganadis*, 248 P. 900, 901 (Nev. 1926) (citation and internal quotation marks omitted).

residual provision." *James*, 550 U.S. at 202. At the very least, the risk of serious physical harm posed by conspiracy to commit robbery—*Mendez* notwithstanding—is substantially different from the risk of serious harm posed by robbery.

IV

Despite these concerns, I, like the majority, cannot say that the Supreme Court's ACCA decisions "undercut the theory or reasoning" of *Mendez* "in such a way that the cases are *clearly* irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (emphasis added). Indeed, interpretation of the ACCA is challenging, and the circuits are split over whether conspiracy is a violent felony.

At least five circuits have held that conspiracy may qualify as a violent felony. *See United States v. Gore*, 636 F.3d 728, 738 (5th Cir. 2011) ("An agreement to commit aggravated robbery presents a serious potential risk of injury . . . . This is particularly true when an overt act in furtherance of the agreement is performed. We need not consider whether an agreement without such an overt act would suffice for purposes of the ACCA."); *United States v. White*, 571 F.3d 365, 372 (4th Cir. 2009) ("[T]he essential conduct underlying the Conspiracy Offense is categorically violent. The Conspiracy Offense cannot be divorced from its violent objective—robbery with a deadly weapon."); *United States v. Boaz*, 558 F.3d 800, 807 (8th Cir. 2009) ("The § 924(e) analysis of a prior conspiracy conviction is governed by the substantive offense that was the object of the conspiracy . . . ."); *United States v. Hawkins*, 139 F.3d 29, 34 (1st Cir. 1998) (holding that conspiracy to commit armed robbery is a violent felony under the ACCA because "[w]e have also

unequivocally held that *conspiracy* to commit a crime of violence . . . it itself a crime of violence"); *United States v. Preston*, 910 F.2d 81, 87 (3d Cir. 1990) ("Since [the defendant] was convicted of conspiracy to commit a violent felony, the use or threat of physical force was a part of his prior conviction for this crime.").

By contrast, at least two circuits have held that conspiracy does not qualify as a violent felony. *See United States v. Whitson*, 597 F.3d 1218, 1222 (11th Cir. 2010) (per curiam) ("Conspiring to commit a crime is a purposeful act . . . . But in South Carolina, the 'gravamen of conspiracy is an agreement or combination. An overt act in furtherance of the conspiracy is not necessary to prove the crime.'" (internal citation omitted) (reaffirmed and applied in *United States v. Lee*, 631 F.3d 1343, 1349 (11th Cir. 2011)); *United States v. Fell*, 511 F.3d 1035, 1039–41 (10th Cir. 2007) (holding that a Colorado conviction for conspiracy to commit second-degree burglary was not a violent felony because "[a]lthough there is an overt act element, the act need not be directed toward the entry of a building or structure . . . . [M]any overt acts sufficient to sustain a Colorado conspiracy conviction create no risk of a violent confrontation between the defendant and an individual interacting with the conspirator while the overt act is being committed."); *United States v. King*, 979 F.2d 801, 804 (10th Cir. 1992) (explaining that the Tenth Circuit "look[s] only to the elements of the conspiracy crime" and holding that conspiracy to commit robbery does "not necessarily present circumstances which created the high risk of violent confrontation inherent in a completed [armed robbery]" (alteration in original) (quotation marks and citation omitted)).

The circuit split shows that there are valid reasons to believe the Supreme Court's ACCA cases did not "clearly" overrule *Mendez*'s holding that conspiracy to commit robbery categorically is a crime of violence (and thus a violent felony). But in light of the questionable reasoning in *Mendez* and intervening Supreme Court precedent, I submit that whether conspiracy can qualify as a violent felony is a difficult issue that warrants our en banc consideration.